BREAUX, C. J.
Plaintiffs claimed an option to buy certain property from defendant of which they were the lessees.
On September 1, 1904, they became defendant’s lessees of a cistern factory, and the building in . which the machinery of the factory is, on Canal street in this city, for the term of one year, at $50 per month.
The contract of lease contained a number of conditions, among them was the option or defendant’s promise to sell for the sum of $30,000, to be paid, one-third cash, and the balance in one, two, and three years, with interest at 7 per cent.
A few months after plaintiff's had gone into possession they claimed the execution off the option; they called on defendant to sell to them the property in accordance with his promise; he refused. Thereupon plaintiffs-tendered him the cash portion of the price and their notes as made to appear by the notary’s proces verbal, through whom the tender was made.
Defendant interposed the exception of no-cause of action. The exception was overruled. He then pleaded in answer that he was ignorant, unable to read or write; that he is dependent on others to read and explain to him the contracts that he signs; that he had never sold the property; never so understood; that he did not expect that the contract of lease contained any offer to sell the property; that he signed the contract in-absolute ignorance of the least offer to sell; that if it contained any stipulation to sell as that which was claimed he never understood it.
He in effect sets up in his answer that it was a mere speculation on the part of the plaintiff, for in May of the following year-Murphy, who had bought the right under the-option from his partners, sold to Paillet for the price of $40,000, making in a very short time the handsome profit of $10,000 in the deal. That it was a short time thereafter-that the defendant was informed that his promise to sell was accepted.
Defendant further avers that when called upon by the notary, who went through some sort of a form of making a tender, he did not understand what was meant. Defendant also avers that the plaintiffs failed to pay their rent note for May, 1905, and that he-availing himself of his rights had notified them that he had canceled his lease.
On defendant’s motion the case was tried, before a jury, whose verdict was against the defendant.
On this verdict the judgment condemned plaintiffs to pay 'the price of $30,000, and defendant to receive the cash portion of the price, $10,000, less what may be necessary teclear the property of incumbrance; to pay costs and rent at the rate of $60 per month. *393 from May 27, 1905, until final delivery of the property to plaintiffs; less also a proportionate amount of the city and state taxes for 1905, and covering a part of the year from January 1st, to May 27th.
The defendant was condemned to deliver to the plaintiffs their four rent notes of $50 each, which matured on May 31st, June 30th, July 31st, and August 31st, upon the plaintiffs paying to him the sum of $45 rental accruing between May 1, and 27, 1905; he was condemned to receive the three notes deposited by the plaintiff the whole aggregating $30,000. The judgment further provided that if the notes matured before final judgment then they were to be relieved from the payment of the interest.
The question of no cause of action will be easily disposed of, for it is evident that there was a cause of action alleged.
Plaintiffs under their allegations, taken as true for the purpose of the exception, had the right to call on the defendant for the title.
There is here no question of forcing the defendant to sign anything. It is only a question of ownership. If the plaintiffs have the right to the title, it will be so decreed and defendant will be condemned to sign the deed. If he refuses to sign then as decided in Barfield v. Saunders (No. 15,-728) 116 La. 136, 40 South. 593, the decree will be the title. It follows that the' exception of no cause of action was properly overruled.
The next ground of defendant’s defense is that tender was necessary. The ready answer to this was that a tender was made on May 27, 1905, and that defendant refused to accept it.
This brings us to the objection of defendant based upon the insufficiency of tender. Touching this it appears that plaintiffs offered the whole of the cash portion of the purchase price. It was comparatively a large amount from which it was proposed to deduct a small sum to clear the property of all incumbrances for which defendant was bound.
1 It will be borne in mind that the defendant never objected, did not at the time, and realty does not, now, save incidentally, to the tender as to its insufficiency; his ground is that he is not bound at all under the contract which plaintiffs set up.
Now this was a contract to do; to perform something which defendant actively refused to perform.
It does seem that under the circumstances a tender in good faith,_ such as it appears has been made, was all that was required. It was nothing but just to deduct from the price an amount due by plaintiff which bore on the property.
We have said before the whole objection centered upon the allegation that the defendant did not propose to be bound.
He positively declined to deliver the property or to consider himself bound by the stipulation touching option.
Delivery of a thing is an obligation which a vendor cannot deny when his vendee has complied with all that can be expected of him. Civ. Code, arts. 2450, 2507.
A vendor’s refusal to deliver the property leaves him scant ground upon which to insist that his vendee must offer to pay to the very last penny, not only the price, but must correctly state the amount to be deducted to satisfy mortgages or other claims on the property bought for which the seller is bound.
The issue was directly presented to the court; why should not the amount (which should be deducted from the price) be deducted.
Right here we will state as it may serve to illustrate as well as fix rights of parties, that $97 were reserved for taxes. Defendant says that, at least $9 of this amount *395 was over the amount which plaintiff could claim. It is mere matter of calculation. The defendant owes his proportion of taxes for the years up to the date of sale.
Plaintiffs having tendered the cash portion of the price, the taxes due by defendant were to be deducted.
It is the same regarding the other items to be deducted from the price.
One of defendant’s contentions is that plaintiffs failed to establish their right to retain $463.21 for an alleged incumbrance in favor of the Union Development & Construction Company.
We have not found that the judgment decrees that this amount must be deducted; it only directs that there shall be deducted from the price what may be necessary to clear the property of incumbrances, including costs of certificate.
Of course there must be a restitution of the suum cuique, but the amount is not so fixed as that defendant can be made to pay more than actually necessary to clear the property of claim due by defendant.
We are of opinion that plaintiffs have complied with all needful to sustain their action. The court can decide touching the extent of the respective obligations of plaintiffs and defendant. In the words, substantially, of one of the decisions cited by learned counsel for defendant: “Everything has been done by plaintiffs which was needful.”
That is all the law requires. Gilbert et al. v. Cooper et al., 4 Rob. 162.
The fact that the amount tendered has not been deposited is another of defendant’s grounds. Plaintiffs cannot be required to deposit an amount which a defendant has positively refused to accept. Beck v. Fleitas, 37 La. Ann. 492.
Deposit is not always necessary to put the defendant in default.
Another of the contentions of defendant presented by learned counsel is that defendant’s property is tied up and beyond his' control; that plaintiffs on the other hand have-nothing tied up; they are not bound to anything.
That may be true. Defendant has no one to blame but himself. As one chooses to bind himself he must be held bound.
An agreement conquers law.
It is not in this case as in the matter of the payment of debts, regulated by article 2167 of the Civil Code.
The - contract here is commutative; it involves the delivery of property upon payment of the price, the want of consignment cannot successfully be urged. Zimmermann v. Langles, 36 La. Ann. 67.
The French commentators upon the articles-of the French Code (1258 and 1259) corresponding with our own leave the question in great part to the discretion of the court, for the reason, doubtless, that there might cases arise of a speculative or fraudulent nature, requiring a different -solution. Here then is no such question.
From Baudry-Lacantinerie, we excerpt and translate the following:
The court may, in the absence of the consignment of the tender, hold the party to whom the tender is made bound. Yol. 2, p. 634.
A similar view is expressed in Dalloz, Nouveau Code Annote, vol. 3, p. 173, No. 245.
In our own Civil Code, article 2167, as it is in the French Code, provides that the sum tendered may be consigned.
If a legal tender has been made of the amount due as alleged, defendant owes no interest thereon although the amount was not consigned. Frey v. Fitzpatrick-Cromwell Co., 108 La. 125, 32 South. 437.
From the record, we infer that plaintiffs were able and willing to pay the amount at any time. Plaintiffs gave defendant notice of their acceptance of the option.
They called on defendant to sign the deed, accept the cash portion of the price," and *397 accept the note. They brought suit within reasonable time to compel performance.’
Another ground of defense is that the contract could not include such an option to sell as was claimed; that the asserted option had no consideration. .
That plaintiffs should have tendered the amount of the rent note which they owed on the day that the tender was made.
1. The question of option will be considered in a moment.
2. Touching the ground urged by defendant that the option had no consideration.
In our view there was consideration. The lease of the property was consideration.
' There was mutuality and consideration. Frank v. Stadford (Wyo.) 77 Pac. 134, 67 L. R. A. 571.
3. This indebtedness was not part of the price, although the clause formed part of the act. The debtor need not tender all he owes; that is, he need not tender other amounts than those which form part of the price. Ency. of Law, vol. 28 (3d Ed.) 19.
This brings us to the real merits of the controversy; that is whether or not the defendant sold the property to plaintiffs.
We have no difficulty in arriving at the conclusion that the contract of lease contained a promise of sale, as three interested witnesses have sworn positively that such was the intention, and with that testimony before us we do not consider that it is possible to arrive at any other conclusion. The option was formal enough.
The three plaintiffs testify that the option was contained in the contract of lease, and that the matter had been fully discussed, before the lease was signed.
They, in their statements, agree fairly well, touching the essentials of a sale; they disagree in regard to certain minor details. Their testimony does not create the impression that they sought to cook up a story; if they had thus attempted to impose upon the court there would have been less difference in their account of the transaction.
Defendant’s contention, on the other hand, is that he is absolutely unlettered; that he never understood that the contract of lease contained the promise to sell the property leased.
On this point one of the plaintiffs, Murphy, testified that the contract was written out in duplicate, and that one of the copies was handed to the defendant some time before it was signed; that he insisted upon certain changes in the contract which were agreed to after some discussion, but the contract was read and reread, and not the least attempt was made to conce.al the fact that it contained the option clause.
This witness says that he read the contract to defendant, and that it was also read by the son of defendant.
McAvoy, another plaintiff, testified that he was present when it was read to the defendant.- 1-Ie also testified that there were’ some changes made in the contract. He saw Murphy hand a eoi>y to the defendant. He says that the son of defendant read it aloud.
Bates, the other plaintiff, testified that the matter of option was discussed with the defendant on two occasions in his presence. The parties appeared before witnesses; the contract was signed in their presence. One of the witnesses asked the defendant in substance if he knew the nature of the contract he was signing, and upon his affirmative answer signed it. True, the defendant only in answer said it was a lease, but he did not ask that the contract should be read or intimate that it should be read to him.
Now, as to defendant’s testimony in denial that a sale was passed.
The defendant at times as a witness is emphatic in denying the clause in question of the contract, and at other times he is not quite so positive.
Defendant testified that he signed the lease; that he had some little schooling, that *399 he could only sign his name, but that he did not read the lease. When questioned as to whether he had sold the property he denied it and said that it was worth $50,000. “My property is worth it, and I want big money for it; Murphy cannot buy it.”
The lease containing the option was signed in September, 1904; the testimony just quoted was given in February, 1906.
It appears that defendant made certain corrections in the lease; he substituted one year as the time for renewal in the place of three years as it had been written by orie of the plaintiffs. He made other changes in the terms of the lease, which show that he was not as ignorant about the text as he seems to imagine.
The testimony in regard to the change in the terms of the lease is not confined- to the testimony of the plaintiffs; the son of defendant as a witness testified that changes were made in the contract of the lease by one of the plaintiffs at the instance of the defendant, his father.
There is another feature of this case to which we will allude in passing.’ Fraud was not pleaded by defendant. Oral statements of what transpired before or at the time that the contract was signed cannot be of great weight in opposition to a written contract. In such a case it must appear clearly that there was deceit or fraud. Allen v. Whetstone, 35 La. Ann. 846; Watson v. Planter’s Bank, 22 La. Ann. 14; Moore v. Rush, 30 La. Ann. 1157.
The testimony of defendant and of his son did not convince the jury.
The contract contained a promise to sell which defendant seeks to .repudiate by the contention that it was not understood by him. The weight of the testimony shows that it was read to him.'
Moreover if the defendant could read, it devolved upon .him to read it; if he could not read then it devolved upon him to have it read to him, and to listen attentively while it was being read to him.
Defendant, through his learned counsel, says that the court refused to allow Price, one of the witnesses, to state that which was said to him by Reynold, another witness, at the time Price signed the instrument; that defendant and plaintiff were present.
On objection of plaintiff, the conversation between witnesses was properly excluded. The statements of the parties at the time were testified to by the witnesses and properly admitted in evidence. What was said as between the witnesses was not admissible, unless for the purpose, of showing fraud or deceit which are not here alleged.
But defendant urges that the clause of promise to sell (option) was without consideration. The following decision of the subject is pertinent: A lease is in some respects consideration for a contract giving the lessees a right to purchase the property during the continuance of a lease. The option cannot be withdrawn by the lessor during that time. Frank v. Hancock (Wyo.) 77 Pac. 134, 67 L. R. A. 571.
There was by the terms of the agreement consideration for the option.
The offer to buy was made during the term of the lease, followed by a placing in default.
There is no question had the amount tendered been deposited, that it would have been at the expense and risk of defendant. Code Prac. arts 414, 415.
The defendant earnestly complains of mistakes committed by the judge in his charge to the jury, and on that account he asked that the case be remanded.
The error charged by defendant was that the court charged the jury that the filing of the suit itself was a sufficient placing in default; that the court also committed error in instructing the jury in regard to the waiver of tender.
*401 The charge taken as a whole agrees in the main with our conclusion.
There is no necessity for this court to agree with all the views expressed by the district •court in the charge.
If a verdict appears correct touching the facts the case will not be remanded in order to afford an opportunity to the court of first instance to remodel the charge as relates to law; moreover, when the evidence is before the Supreme Court, the error in the judge’s charge has no importance as it cannot affect the decision on appeal. Schlater v. Wilbert, 41 La. Ann. 406, 6 South. 127.
Again, on the same subject, although the judge may have charged improperly if the •evidence could not authorize a different verdict it will be upheld. Stackpole v. Wickham, 7 La. Ann. 678; New Orleans, O. & G. W. R. Co. v. Lagarde, 10 La. Ann. 150; Starns et al. v. Hadnot et al., 45 La. Ann. 318, 12 South. 561; Howell v. Railroad Co., 22 La. Ann. 603; Bach v. Miller’s Syndic, 16 La. Ann. 44; Regan & Balcom v. Express Company, 49 La. Ann. 1579, 22 South. 835.
We infer from the rulings of the district judge, of which there is written evidence, that he was not inclined to let the decision rest alone with the jury; that he followed the testimony; was familiar with the facts and agreed with the jury.
The finding comes to us,- as we understand, with his special approval. True, nine of the jurors concurred in the verdict and three were of a different view. Under the circumstances it does not weaken the finding. The discussion resulted in a difference in which the preponderance was for plaintiffs.
We have arrived at the conclusion that the evidence before us is full enough to affirm the verdict and the judgment, and it follows that defendant’s reconventional demand is rejected.
For reasons assigned, the judgment is affirmed.