(48 South. 152.)

No. 16,996.

RONALDSON & PUCKETT CO., Limited,
v. BYNUM.

(Nov. 16, 1908. Rehearing Denied Jan. 18, 1909.)

1. CORPORATIONS (§ 434*) — POWERS — POWER TO BUY AND SELL LAND.

In the course of its business, a corporation is not prohibited from owning lands.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1765, 1766; Dec. Dig. § 434.*]

2. CORPORATIONS (§ 434*) — POWERS — POWER TO BUY AND SELL LAND.

To the end of securing a claim, it may buy land.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1766; Dec. Dig. § 434.*]

3. CORPORATIONS (§ 435*) — POWERS — POWER TO BUY AND SELL LAND.

The "powers clause" of the charter in part reads, "And to these ends it may acquire and dispose of any and all real estate necessary for its purposes." The power is not violative of Const. art. 265.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1766; Dec. Dig. § 435.*]

4. TENDER (§ 16*)—EXCUSES FOR INSUFFICIENCY—REFUSAL TO ACCEPT.

Defendant's refusal to carry out the contract had a waiving effect as relates to tender. There was no necessity of going further in at-

tempting to tender the price. The defendant positively refused to receive it, and stated that there was no necessity of counting the amount tendered.

[Ed. Note.—For other cases, see Tender, Cent. Dig. § 52; Dec. Dig. § 16.*]

5. VENDOR AND PURCHASER (§§ 350, 351*) — SALES—REFUSAL TO CONVEY—DAMAGES—LESION.

In matter of determining lesion, the value of the property at the date that the option was accepted (and not the date of the offer to sell) is to be ascertained; and, as to value, its different elements should be proven with reasonable certainty.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 1050, 1043; Dec. Dig. §§ 350, 351.*]

6. VARIANCE IN EVIDENCE.

There is some variance in the testimony, in order to establish beyond question the value of the land upon which the title depends.

(Syllabus by the Court.)

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; Harney Félix Brunot, Judge.

Action by the Ronaldson & Puckett Company, Limited, against Margaret C. Bynum. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Hall & Monroe, for appellant. Thomas Jones Cross, for appellee.

BREAUX, C. J. This is an action on the part of plaintiff to compel the defendant, Mrs. Margaret C. Bynum, and her husband, Walter W. Bynum, to aid and authorize his wife to sign an act of sale.

She signed a contract of lease of her plantation, known as the "Istrouma," on August 1, 1900. In the lease there was a clause inserted which gave to her lessee the right or privilege of buying the Istrouma plantation for $9,500.

In the year 1898 she sold the place to D. N. Barrow for the sum of $9,500.

Some time afterward Barrow and she canceled the sale and Barrow retransferred it to her.

After the retransfer Mrs. Bynum leased the place to Ronaldson & Puckett for five years

from the 1st day of January, 1899, for $500 per year and the taxes.

To go a little back in time and take up acts preceding in date the retransfer to Mrs. Bynum: Barrow, David, Puckett, and Ronaldson formed a partnership under the name of "Istrouma." They cultivated the place as the lessees of Mrs. Bynum. This partnership was not successful, and became indebted to plaintiffs to an amount of about $12,000. Barrow, as the owner of one-half of the place, was indebted for one-half of the amount of $12,000, and desired to obtain his release, and surrender all of his interests, which were very little, if anything, for he was heavily indebted.

Plaintiff consented to release him if he would transfer to them the lease, with its option; but they made it a condition that Mrs. Bynum enter into a contract with them. This Mrs. Bynum did.

The old lease was canceled, and a new contract signed, giving to Ronaldson, Puckett & Co., Limited, the same right as Barrow had, including the option.

It appears by the testimony that the motive of the plaintiff was to try to get back their money; i. e., collect the debt which the partnership owed to them, or at any rate Barrow's debt of the firm.

The property was afterward leased by plaintiff to J. T. Howell for two years, beginning January 12, 1902, and terminating January 12, 1904. A promise of sale was included in the act of lease by plaintiff to Howell, to remain open for the two years of the lease. The price fixed in case lessees concluded to buy was $15,500.

Howell accepted the promise of sale, and sued to compel plaintiff to transfer to him title to the property.

That matter seems to have remained in statu quo.

The profit plaintiffs state they desired to apply to the payment of the amount due them by the partnership before named. According to their statement the amount due them was $12,000.

The plaintiffs and a few others organized a company. The charter provides that the purpose and the nature of the business was general merchandising and plantation supplying business, and "to these ends it may acquire and dispose of any and all real estate for those purposes."

This is the extent of the "powers clause."

There are three grounds of defense:

Ultra vires.

Want of tender.

Lesion.

In support of the first ground, the defense quoted article 265 of the Constitution, to wit:

"No corporation shall engage in any business other than that expressly authorized in its charter or incidental thereto; nor shall it take nor hold any real estate for a longer period than ten years except such as may be necessary and proper for its legitimate business and purpose"

—as applying in the present case, and as prohibiting the defendant from buying land to be cultivated by them as incidental to their business.

The first proposition we will consider is the extent of the right of the incorporators under the charter as relates to real estate. The corporation had the right to buy and sell land for the purpose of carrying on its business. If in carrying on its business the situation became such as to render it to its interest to buy or sell land for the purpose of securing or collecting a debt, it has needful power. Otherwise, the corporation would have no right of foreclosure of a mortgage, or to execute a judgment and become a purchaser at the foreclosure sale, or at a sale made under a fi. fa. for the payment of a debt due it.

That is a power which can scarcely be denied to any corporation. It is not denied to them when exercised by them in the ordinary course of their business.

Even the United States banks have that power, although the policy of the government, as made evident by the charters of the banks, is against their purchasing and owning real estate.

The condition here is about the same. This is about all that has been accomplished in the present transaction between plaintiff and defendant.

We readily concede that a corporation organized to carry on a general merchandise and plantation business would have no right to turn aside from the purpose of its real obligation to speculate in real estate or to engage in planting.

Here there was no turning aside from the purpose of the corporation. It sought primarily to collect a debt. The promise of sale was an asset. It was susceptible of transfer and sale, and as such it could be acquired by the plaintiffs and transferred, to the end of realizing something upon the claim they held.

From that point of view the transaction was proper enough for the legitimate business or purpose of the corporation. It was a permissible act. Besides, the weight of the testimony shows that the acquiring of the property was an incident of the business.

Furthermore the business was to advance the plantation and control the cotton. They advanced to the hands on their own plantation and controlled the cotton. This falls within the powers clause of the charter whether the persons advanced to were laborers on their plantations or on the plantations of others. The advances are made to the workmen.

The act attacked by defendant is not annullable as ultra vires.

We will consider article 265 of the Constitution, cited by defendant.

It is not prohibitive to the extent, at any rate, for which the defendant contends.

It is true that by that article a corporation should not engage in any business than that expressly authorized by its charter or incidental thereto.

Here the act complained of was at least incident to its business, and not ultra the charter.

The last clause of the article cited supra limits the time that a corporation may hold real estate:

"If not necessary and proper to its legitimate business or purpose, it shall be ten years."

But, if it is necessary and proper to the business or purposes, it does not appear to us that there is any time limit at all.

The word "except" of the article of the Constitution cited supra takes it out of the time limit. If the purchase of real estate be a necessary incident of the business, then the time mentioned (10 years) does not apply. If it is authorized by the charter, but not incidental to the business, then it does apply.

But, be this as it may, we conclude that the charter contains the authority which plaintiffs claim for the purposes in question, and that the article of the Constitution is not here prohibitive.

### Want of Tender.

Defendant denied that there was any binding contract. That of itself has been held by this court in several cases as relieving from the necessity of making formal tender.

But the plaintiffs did all within the bounds of reason to make a tender. One of the plaintiffs, representing his firm, in company of witnesses and a notary, called upon the defendant and offered the amount. Defendant declined to receive it, and added that it would be useless to count the price to her. She positively refused to accept it. There was no necessity of going any further in matter of this default. Sonia Cotton-Oil Co. v. The Red River, 106 La. 46, 30 South. 303, 87 Am. St. Rep. 293; Ware v. Berlin, 43 La. Ann.

537, 9 South. 490; Louisiana Molasses Co. v. Le Sassier, 52 La. Ann. 2081, 28 South. 217.

## Lesion.

Now as to this plea: If the date from which the prescriptive period begins is to be taken as of the date of the contract, there was no lesion. If it is to be taken from and after the date that this property advanced in value (and all property in fact increased in value), then there may be lesion.

To give dates: The contention of defendant is that the value of the land is to be estimated, not from the date of the contract in 1900, but from the date that the plaintiffs made their offer to buy. That was in May, 1903.

It stands to reason that the time of the prescriptive period should begin from the date of the contract, for, were it otherwise, the one accepting would not be inclined to accept if the property decreased very much in value; but, if it increased, he would be anxious to consummate the transaction and take the property. The obligor, or the party offering to sell, would be at considerable disadvantage. The advantage would be all on one side. That would be scarcely fair. Our Code must be followed. We have no decision in point, but the article is plain (article 2590); besides the French authorities and text-writers are persuasive and direct. These we will refer to later.

We are not concerned with an agreement between the possessor and promisee. There is here only a pollicitation or option, which only becomes a binding contract from the date of acceptance, not before acceptance.

The lessee acquires no right as an owner before the date of acceptance.

The French text-writers are very positive on the subject. It cannot well be otherwise, for their Code on the subject is similar to ours.

Laurent, who has devoted close study to the subject of contracts, says a promise of sale before acceptance is an option—to use the original, "pollicitation."

In the twenty-fourth volume of his work his text leaves no room for doubt as to his opinion, which, as ours, is conclusive and unamenable.

We translate from the text:

Sec. 115. In fact there was lesion, and the action in re was well grounded, as the sale existed only by the acceptance of the vendee. It was at that date that the value of the immovable was to be calculated to fix its value.

Baudry de Lacantinerie is substantially of the same opinion. De La Vente, § 702.

Fuzier-Herman refers more particularly to French laws and jurisprudence. His Digest is direct.

Lesion must be fixed at the date that the act becomes complete by the acceptance of the promisee. Volume 4, p. 22, § 50.

This point of view eliminates from consideration the value of the property in 1900 as a direct basis of calculation; i. e., the value in 1900 may be proven, but it cannot serve as the basis of the judgment, but it may serve to prove something about its value in 1903, as may the proof of value in other years, but proof of value in 1903 must control. It is a fact conclusive.

## The Value of the Place in 1903.

We have gathered all the material facts relating to values set forth in the record.

As relates to sales of the property:

In 1898 it was sold to D. N. Barrow for $9,500 on credit.

In 1900 this vendee became plaintiff's vendor and retransferred the property to her.

She in August of that year leased the property to defendants for $500 per annum. The contract contained the option before mentioned.

In the year 1902 defendants leased the place (known by the name of "Istrouma") for the year for $1,939 (rental). This was ex-

ceptional, it seems. There were stubbles on the place which gave it value for that year. For the year following (1903) they leased it to same lessee for $1,000.

The lease contained an option by defendants to lessee, Harrell, to sell it to him at any time during the two years' lease for $30 an acre. There are 531 acres in the place.

This as relates to sales.

Now as to the offer to buy the property: Mr. H. L. Favrot in 1902 was willing to give $18,000 for the place, and expressed willingness to add a few hundred dollars, if necessary.

Ben Mayer offered $15,000 for half of the place.

Mr. McCamland in 1904, early part, expressed some willingness to give over $20,000. We are not impressed by these unexplained offers to buy. The witnesses who testified that offers had been made were doubtless sincere, but the would-be buyers were not heard as witnesses. The facts and circumstances of the offers were not proven to a sufficient extent to be conclusive of the value.

It was listed with a land agent, Mr. Hummel, in 1904 or 1905, for over $40,000. This was done by the lessee in possession. We have seen that it was a year after defendants sought to avail themselves of the option. This testimony also needs some explanation. Hummel, with whom it was listed, evidently did not believe it was worth any such amount in 1903.

One of the defendants testified that his firm thought that the option of which they could avail themselves within stipulated time would be enough to pay the indebtedness to their firm. It was said that this indebtedness amounted to $12,000. On that basis the place was worth over $20,000. This was said by the witness while testifying on another subject; but, when testifying as to the value of the property, his testimony is quite different. Besides, it does not appear whether he referred to the Barrow indebtedness of $6,000, or the $12,000 to the firm. They sold it for $15,500, covering thereby the Barrow debt.

We have considered the amount of rental taken as a whole. It does not throw much light upon the subject.

As relates to value, the real estate agent for defendants placed it at $30 per acre in 1903. He said that there was a great increase in value since 1902; but he testified positively that the place in 1903 was worth $30 an acre—$15,500.

Mr. Aldrich considered that the property was worth $30 per acre in that year; that there had been a steady increase in real estate in East Baton Rouge since 1897, on account of the general prosperity and the high price of cotton.

Ronaldson, of the defense, said that $15,500, for which they sold the place to Mr. Howell in 1902, was an adequate price.

The real value is not sufficiently shown. Reasonable certainty is necessary to sustain plea of lesion. De Maret v. Hawkins, 8 La. Ann. 484. In Succession of Witting, 121 La. 501, 46 South. 606, similar views were expressed. We are not sufficiently informed as to the value of the property in 1903. Witnesses who have offered to buy the place may perhaps illuminate the subject by testifying regarding their offers and why they were made. Experts may be heard, and other testimony going to show value (in 1903), with satisfactory results and some clearness.

Value has not been sufficiently shown to form the basis of a judgment with a degree of certainty. We are of the opinion that the case should be remanded, to prove the value of the place in May, 1903, and for no other purpose.

It is therefore ordered, adjudged, and decreed that the judgment appealed from is avoided, reversed, and annulled.

It is further ordered, adjudged, and decreed that plaintiff under its charter has the right to acquire real estate; that it has the right to compel defendant to make good title to it of the property under the option, which the defendant has accepted, provided the plea of lesion pleaded by defendant is not well founded, and provided the property involved here was not worth over and above $19,000 on the date the offer was made in form to plaintiff to accept title, viz., on May 15, 1903.

It is further ordered, adjudged, and decreed that this case be, and it is, remanded to the district court, in order that the issue of lesion may be tried and decided. If the price at said date was less than one-half of the value of the property, the sale (or promise of sale or option) will be decreed invalid, and a decree shall be accordingly rendered. If the price was not one-half less than the value of the property, then the same shall be valid, and the defendant shall make title as prayed for, and a decree accordingly rendered. And it is further ordered, adjudged, and decreed that judgment be rendered in favor of defendant for such rental as may be due her on the day that judgment will be rendered.

It is further ordered, adjudged, and decreed that the costs in the district court shall await the final decision in this case, and that the appellee shall pay the costs of appeal.

MONROE, J., concurs in the decree.