46 So.2d 752 (1950)
217 La. 510
LAKESIDE DAIRIES, Inc.
v.
GREGERSEN et al.
No. 38909.
Supreme Court of Louisiana.
March 20, 1950.
Rehearing Denied April 24, 1950.
*753 L. W. Cockfield, New Orleans, for defendant and appellant.
Henriques & Mayo, New Orleans, for appellee.
HAMITER, Justice.
Defendants, in this action for specific performance, are appealing from a judgment which ordered (among the other things hereinafter noted) that they transfer to plaintiff certain land, and the improvements thereon, located in Bridgedale Subdivision, Jefferson Parish, particularly identified as 5100 Airline Highway.
In a written contract of date September 22, 1942, prepared on a printed lease form, defendants (as owners) rented and leased unto plaintiff the mentioned property for a period of one year commencing October 1, 1942, and ending September 30, 1943, the stipulated rental therefor being $150 per month. The contract further recited that the lessee had the right to lease the premises under the same terms and conditions for an additional period of four years beginning October 1, 1943, it to notify the lessors or their agents in writing on or before August 1, 1943 of its desire to so extend the lease.
*754 Other pertinent provisions of the contract, which were entirely typewritten, stated:
"The lessors, as an additional consideration for this lease agree to and give the lessee the privilege of purchasing the entire property and premises leased herein at any time during the life of this lease or during the life of any extension or renewal thereof, for the price and sum of ($11,100.00) Eleven Thousand One Hundred Dollars. It is understood and agreed that if the lessee should take advantage of this option and privilege to purchase the property herein leased, the sum of One Hundred ($100.00) Dollars per month out of the monthly rent herein shall be applied to the purchase price at the time of the transfer of the title to the property to the lessee.

* * * * * *
"In the event the lessee exercises the option to purchase the property herein leased, the lessors will be given the privilege to purchase Lots No. 7 to 16 inclusive facing Rose Avenue, or any of them, for the price and consideration of One Hundred Fifty ($150.00) Dollars per lot, this privilege extending for a period of six months from the time the lessee should take title under the exercise of its option."
On the confection of the lease contract the property was burdened with a mortgage held by the Jefferson Standard Life Insurance Company, it having been executed on July 9, 1941 to secure a loan in the principal amount of $12,000. The act of mortgage contained a provision that all rentals accruing under any present or future lease would be paid to the mortgagee, its successors and assigns.
While in possession of the premises, and having paid all rentals due under the contract, plaintiff addressed a letter to defendants of date July 30, 1943, giving notice of its exercise of the privilege to extend the lease for a period of four years beginning October 1, 1943. Thereafter, without any objection from defendants, it retained possession and continued the payments to the mortgagee of the agreed monthly rentals, these having been made in advance and in quarterly installments.
In a letter dated August 15, 1944, plaintiff's attorney wrote to defendants as follows:
"I have been instructed by my clients, Lakeside Dairies, Inc., through Mr. C. E. Roemer, to notify you that the said Lakeside Dairies, Inc., hereby exercises its rights under the lease executed by and between you and said Lakeside Dairies, Inc., on September 22, 1942, and which lease was renewed for a term of five years, together with all the terms and conditions therein specified, on July 30, 1943, and that said Lakeside Dairies, Inc., under the terms of said lease, hereby exercises its option and privilege of purchasing said property in accordance with the terms of said lease and hereby agrees to purchase said property under said terms and conditions contained in said contract of lease, said property being known as #5100 Airline Highway, Jefferson Parish, and more fully described in the act of sale and purchase attached to said lease and in copy of mortgage annexed thereto, said act of sale being by Mr. and Mrs. Carl E. Robyn to Mrs. Grace Liddell Gregersen.
"I would appreciate it if you would advise when it would be convenient for you to sign the act of sale transferring said property to said Lakeside Dairies, Inc., so that I may prepare the necessary act to be signed by you and by the Lakeside Dairies, Inc.
"Awaiting your further advices, I am. * * *"
No steps seem to have been taken by any of the litigants in connection with this letter. The defendants did not even acknowledge receipt of it. And there was no offer of performance by plaintiff, either by way of making tender of the purchase price or submitting a deed for defendants' signature; rather, thereafter it continued to make the regular rental payments to the Jefferson Standard Life Insurance Company for credit on defendants' mortgage indebtedness.
Approximately eleven months later, specifically on July 23, 1945, plaintiff (through its treasurer) addressed the following letter to defendants:
*755 "Under date of August 15, 1944, the writer instructed Mr. Mayo, our attorney, to notify you that the Lakeside Dairies, Inc., had exercised its right under the lease executed by and between you and said Lakeside Dairies, Inc., on September 22nd, 1942, and which lease was renewed for a term of four years, together with all the terms and conditions therein specified on July 30, 1943, and that said Lakeside Dairies, Inc., under the terms of said lease exercises its option and privilege of purchasing said property, in accordance with the terms of said lease and option, and you were notified to that effect on August 15, 1944, by registered mail, received by you on August 16, 1944.
"At that time you were requested to notify Mr. Mayo when it would be convenient for you to sign the Act of Sale, transferring said property known as 5101 Airline Highway, Jefferson Parish, New Orleans, Louisiana, so that the necessary Act of Sale could be signed, but you failed to acknowledge receipt of said letter.
"We now wish to again notify you, that the Lakeside Dairies, Inc., hereby exercises its right under the said lease and option to purchase the said property designated in said lease, known as 5101 Airline Highway, Jefferson Parish, which property is described in an Act of Sale and Purchase, and in a copy of Mortgage annexed, and made part of the original lease.
"Under the terms of said lease and option we hereby take up and exercise our right to purchase said property for the price and sum of $11,100.00, as specified in said contract, subject to a credit of $100.00 per month paid under the terms of said lease, which is to be applied to the purchase price and we to assume the mortgage existing on said property in favor of the Jefferson Standard Life Insurance Company.
"We hereby notify you to appear at the office of Harry M. Mayo, Notary Public, 310 Richards Building, Corner Gravier and Baronne Sts., New Orleans, La., on Friday, July 27, 1945, at the hour of 3:00 o'clock P.M. in order there and then to pass the Act of Sale covering the property which we are ready to purchase from you, and which you have contracted to transfer to us, all in accordance with said contract and option dated September 22, 1942."
Defendants failed to respond to this letter. Plaintiff's officers, on the other hand, appeared at the designated time and place, willing, ready, and able to accept title in accordance with the terms of the original contract.
On October 5, 1945, plaintiff's attorney again wrote defendants implying that suit would be filed in the event an amicable adjustment of the matter could not be made. No such adjustment was ever reached; and this action, the primary prayer of the petition of which is for specific performance of defendants' obligation to sell, followed on October 29, 1946.
To the action defendants pleaded principally (1) that plaintiff had not timely exercised its privilege to extend the lease, as a result of which the option to purchase became ineffectual; and, alternatively (2) that the contract of sale, growing out of plaintiff's exercise of the option to purchase, was attended with lesion beyond moiety.
The district court rejected both of these defenses. As shown by the formal judgment it ordered defendants to transfer the property to plaintiff within ten days, by an act of sale and free of all encumbrances, upon plaintiff paying the sum of $11,100 (the purchase price agreed on in the original lease contract), less a credit of $6000 (rent of $100 per month paid by plaintiff to defendants from October 1, 1942, to September 30, 1947, both dates inclusive, to be applied on the purchase price in accordance with the terms of the contract). Further, the district court decreed that in default of the execution of a formal act of sale plaintiff be recognized as the owner of the property upon its depositing with the clerk of court the sum of $11,100, less the above mentioned sum of $6000 and also less the sum of $4935 (the latter amount being the then unpaid balance of the mortgage indebtedness on the property). Additionally, the judgment condemned defendants to pay to plaintiff the sum of $378.48 (certain taxes and costs paid by plaintiff); it reserved to plaintiff the right to claim additional *756 sums advanced in connection with the property and also to claim damages of $50 per month from July 27, 1945, until defendants transfer title; and it decreed that defendants have the privilege of repurchasing Lots 7 to 16, inclusive, facing Rose Avenue, within a designated period.
Defendants are appealing from this judgment, and they urge here the same two defenses offered in the district court.
Undoubtedly correct was the ruling rejecting the contention that no extension of the original lease resulted. Even if defendants did not receive plaintiff's renewal notice (letter dated July 30, 1943), as they testified, until some 12 or 14 days after the stipulated date (August 1, 1943) for exercising the extension privilege, they are without right now to urge the tardiness of that notice. Following such date defendants remained silent, at no time making protest of plaintiff's occupancy of the premises; also they accepted and approved, at least tacitly, the numerous rental payments made by plaintiff to the Jefferson Standard Life Insurance Company and credited on their mortgage indebtedness. Under these circumstances they waived the contractual requirement respecting the giving of timely notice. Lingle v. Wainwright, 215 La. 117, 39 So.2d 843.
A more serious question is presented by the defense of lesion beyond moiety, some of the articles of the Louisiana Civil Code relating to which doctrine read as follows:
"Art. 2589. If the vendor has been aggrieved for more than half the value of an immovable estate by him sold, he has the right to demand the rescission of the sale, even in case he had expressly abandoned the right of claiming such rescission, and declared that he gave to the purchaser the surplus of the thing's value.
"Art. 2590. To ascertain whether there is a lesion beyond moiety, the immovable must be estimated according to the state in which it was, and the value which it had at the time of the sale.
"Art. 2591. If it should appear that the immovable estate has been sold for less than one-half its just value, the purchaser may either restore the thing and take back the price which he has paid, or make up the just price and keep the thing. (As amended, Acts 1871, No. 87.)

* * * * * *
"Art. 2598. The buyer is entitled to repayment for ameliorations which he has effected, although they be merely for pleasure and convenience."
Plaintiff's counsel insist that lesion beyond moiety cannot be pleaded successfully here for several reasons, one of which is that the doctrine is not applicable in a suit to enforce specific performance of an option to purchase since the codal provisions, especially Article 2590, contemplate only a completed sale. In considering this position it is to be noticed first that plaintiff, in this action, does not seek to enforce an option to purchase; rather, it purposes to compel defendants' performance of a contract of sale which grew out of the admitted exercise by plaintiff of the originally granted option to purchase. Had there been no exercise of the option with a resultant contract of sale clearly plaintiff's petition would set forth no cause of action. Hence, the correct question for consideration now is whether the doctrine may be applied as to a contract of sale.
To say that it is applicable solely to a completed sale and cannot be urged by a vendor under a contract of sale is to say that it is no defense to a suit for specific performance brought by the vendee under such a contract; for in a suit of that character there is always involved only a contract of sale (the enforcement of which the vendee seeks), never a completed act of sale. Furthermore, to so hold would make for a multiplicity of suits and lead to an absurdity. Thus, when a vendor complies with a judgment (in a specific performance action) ordering him to perform under the contract of sale, surely he has the right to attack the completed sale for lesion in a subsequently instituted suit. The question posed above, in our opinion, must be answered in the affirmative.
In Ronaldson & Puckett v. Bynum, 122 La. 687, 48 So. 152, which involved a factual *757 situation almost identical with that presently before us, the defense of lesion was recognized as being proper. There, as here, plaintiff had sued for the specific performance of a contract of sale which resulted from its exercise of an option to purchase contained in a lease contract executed by the defendant. True, the contract in that case did not provide for the application of some of the rental payments to the purchase price on the exercise of the option (as does the instant contract); but that fact furnishes no important distinction.
Next, plaintiff's counsel argue that the lesion doctrine is inapplicable because of the provision in the lease contract which grants to defendants the privilege of repurchasing certain lots (a part of the entire property) at $150 each. They say, in this connection, that by reason of such privilege defendants have the opportunity of profiting, just as plaintiff has, from any value attained by the property in excess of that originally agreed upon. We find no merit in the argument. The mentioned privilege is nothing more than an option in favor of defendants, the exercise of which can be performed by them only in the event plaintiff acquires title to the whole property after the termination of this litigation. Even should that event occur, defendants would not be obligated to repurchase the lots; nor does it appear certain that they would be able financially to do so. But should they exercise the option ultimately, plaintiff could then urge lesion, just as they are doing now.
Finally, counsel for plaintiff contend that if the defense of lesion is appropriate here the true value of the property must be determined as of the date of the contract of lease (September 22, 1942) which granted to it the option to purchase, not as of the date on which the option was exercised; and that, this being true, defendants have not shown that the property was worth in 1942 more than double the agreed purchase price ($11,100).
In the case of Ronaldson & Puckett v. Bynum, cited supra, and which presents as afore stated almost identical facts, this court held definitely that with respect to the issue of lesion the date on which the option was exercised or accepted is controlling in arriving at the property's value, not the date when it was granted. That holding, obviously, is logically sound. As stated in Civil Code Article 2590, quoted supra, the value of the immovable at the time of the sale governs in ascertaining whether there is lesion. Clearly, a mere purchase option, on being granted and unexercised, contains no elements of a sale. True, it affords the grantee the privilege of buying and obligates the grantor, during its existence, to sell; but until the option is exercised the grantee has no enforceable rights as owner. In the absence of a proper exercise of the option, as pointed out above, the grantee cannot succeed in a specific performance action in obtaining a compulsory transfer of the property. Neither can the grantor, under the same circumstances, require the grantee to take title.
Counsel for plaintiff cite numerous decisions of this court as authority for the contention that the date of the contract granting the option governs in determining the value; but none appears to support it. Thus, the real holding in Succession of Witting, 121 La. 501, 46 So. 606, 15 Ann.Cas. 379, was that by taking either the date of the contract granting the option (1903) or the date when the option was exercised (1906) the result respecting lesion would be the same, because the evidence failed to show that the agreed purchase price was less than one-half of the value of the property at any time between those dates. The cases of Murphy v. Hussey, 117 La. 390, 41 So. 692, Kinberger v. Drouet, 149 La. 986, 90 So. 367, and Standard Oil Company of Louisiana v. Milholland, 167 La. 707, 120 So. 59, present no issues of lesion. In Haas v. Cerami, 201 La. 612, 10 So.2d 61, 64, the court only concluded that "* * * there is no right of action to annul a contract for the sale of mineral rights on the ground of lesion, under article 1860 of the Civil Code, or on the ground that the price stipulated is out of proportion to the value of the mineral right, under article 2464 of the Civil Code, *758 when the mineral right is on nonproducing land, and has therefore only a speculative value. * * *"
Considering then that the defense of lesion is proper in this action, and that the property's value is to be determined as of the time of plaintiff's exercise of the option, there arises the further question of whether such exercise resulted from the notice thereof given in the above quoted letter of plaintiff's attorney dated August 15, 1944, or from that contained in the letter of plaintiff's treasurer of date July 23, 1945. The exercise of the option, in our opinion, resulted from the latter notice, and therefore occurred in July, 1945. As above pointed out it was not until then that plaintiff made any attempt to perform under the option. Meanwhile, following the former notice, its possession was entirely as lessee, it having paid the rentals in accordance with the lease agreement during the period of some eleven months. Furthermore, the pleadings of plaintiff indicate that it considered July, 1945 to be the month in which it exercised the option, for in the petition it alleges and claims damages for the rent which it has paid from July 27, 1945 until the property is transferred.
This brings us to an issue of fact regarding the value of the affected property as of July, 1945. If the value then was not more than twice the agreed purchase price of $11,100, plaintiff is entitled to succeed in this action for specific performance; if otherwise plaintiff may either restore the property to defendants and obtain reimbursement for the ameliorations he has effected thereon or make up the just price and keep it (Civil Code Articles 2591 and 2598, quoted supra). But such factual issue cannot be determined presently for the reason that the record contains no proof whatever respecting the property's value in 1945.
Some evidence was offered as to values in 1942 and 1944. This evidence, as stated in Ronaldson & Puckett v. Dynum, supra, was admissible, for it may tend to prove something about the 1945 value; but it cannot serve as the basis for the judgment herein. Proof of value during the last named year must control. Therefore, in the interest of justice and in order that a correct decision may be reached, the case will be remanded for the restricted purpose of permitting the parties litigant (both plaintiff and defendants) to introduce evidence in proof of the property's value in July, 1945. After it is introduced the trial judge will render judgment in accordance with law, based on both the new evidence and that heretofore received.
For the reasons assigned the judgment appealed from is reversed and set aside and the case is remanded to the district court to be proceeded with according to law and consistent with the views herein expressed. The costs of this appeal shall be paid one-half by plaintiff and one-half by defendants. All other costs shall await the final determination of the litigation.
McCALEB, J., dissents in part with written reasons.
MOISE, J., recused.
McCALEB, Justice (dissenting in part).
While I fully subscribe to all other views of the main opinion, I am not in accord with the ruling that, in applying the doctrine of lesion beyond moiety to an option contract, the date upon which the option is exercised governs instead of the date upon which the contract was made.
Article 2590 of the Civil Code, relied on by the majority, declares that, in ascertaining whether there is lesion, the property must be estimated "according to the state in which it was, and the value which it had at the time of the sale". This, of course, is perfectly clear when applied in cases of ordinary sales. But it is to be borne in mind that, at the time of the adoption of our Code and, in fact, until the passage of Act 249 of 1910, amending Article 2462 of the Code, an option contract was foreign to our law. See Moresi v. Burleigh, 170 La. 270, 127 So. 624. And, while such contracts were not unknown to the courts, an examination of the jurisprudence *759 will reveal that common law rules were employed in determining their validity. See Murphy v. Hussey, 117 La. 390, 41 So. 692 and Succession of Witting, 121 La. 501, 46 So. 606, 15 Ann.Cas. 379.
The pertinent portion of Article 2462, as amended by Act 249 of 1910 and Act 27 of 1920, declares: "One may purchase the right, or option to accept or reject, within a stipulated time, an offer or promise to sell, after the purchase of such option, for any consideration therein stipulated, such offer, or promise can not be withdrawn before the time agreed upon; and should it be accepted within the time stipulated, the contract or agreement to sell, evidenced by such promise and acceptance, may be specifically enforced by either party."
It will be observed from the foregoing that, whereas an option is not converted into a contract of sale until it has been accepted, it is fully complete and binding as to the vendor from and after the date on which it is given; it is an irrevocable agreement by him to sell at the stipulated price during its life. Hence, it is different from a mere pollicitation or offer to sell which is binding on the vendor only when and if accepted by the grantee. Standard Oil Co. of Louisiana v. Milholland, 167 La. 707, 120 So. 59.
In view of the fact that options were unknown to our law at the time the Civil Code was adopted, it seems plain that Article 2590, in providing that the time of the sale governs in determining whether there has been lesion, is either inapplicable to option contracts or, if applied, is subject to interpretation. Adopting the latter method, in an effort to fit Article 2462 into the scheme of civil law, requires consideration of the fundamental reason for the doctrine of lesion. Lesion is based on implied error or imposition by virtue of the inadequacy of the price. Hence, when Article 2590 states that it is to be estimated according to the value which the thing had at the time of the sale, it means nothing more than that the law will be applied for the protection of the vendor as of the date or time he made his bargain. This view is in conformity with Article 1871 of the Civil Code which declares that in all questions of lesion "the value of that which was the subject of the contract at the time of making it, is the rule by which the lesion is to be ascertained". Article 1871 is, of course, to be read and considered with Article 2590 as they are laws in pari materia.
By applying Article 1871 to the case at bar, it will be immediately perceived that the date on which defendants granted the lease containing the option to sell their property for $11,100 is the date they made their irrevocable contract, i. e., the date of their bargain and, in ascertaining whether there has been imposition or lesion, the value of the property at that time is the only pertinent inquiry.
It is true that the opposite conclusion of the majority is fully sustained by the opinion in Ronaldson & Puckett Co. v. Bynum, 122 La. 687, 48 So. 152. That case was decided in 1908, prior to the passage of the amendment to Article 2462 relative to option contracts, and is founded upon a literal application of the provisions of Article 2590 of the Code, i. e., that the date of the sale is the date to be used in ascertaining the question of lesion.
Aside from the failure of the court in the Ronaldson case to advert to Article 1871 of the Code, the opinion discloses a lack of understanding of the difference between an option and a pollicitation and indiscriminately treats them as one and the same thing. Consequently, the court did not give thought to the fact that, in the granting of an option, the prospective vendor makes his bargain and, insofar as he is concerned, all elements of a contract of sale are present, i. e., the thing, the price and consent.
For these reasons, I do not believe that the decision in the Ronaldson case should be perpetuated and I respectfully dissent from the majority view that the question of lesion is to be reckoned as of the date the option is exercised.