**OXFORD PROPERTIES & FINANCE LTD., Plaintiff–Appellant,**

v.

**Minor M. ENGLE, Deceased, Represented by Milton E. Franke, Administrator, and Engle's Appliance Parts, Inc., Defendants–Appellees.**

**No. 90–15742.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 8, 1991.

Decided Sept. 11, 1991.

---

Jaquin C. Arriola, Arriola, Cowan & Bordallo, Agana, Guam, for plaintiff/appellant.

Jeffrey A. Cook, Agana, Guam, for defendants/appellees.

Before SCHROEDER, FLETCHER and FERGUSON, Circuit Judges.

FLETCHER, Circuit Judge:

Appellant Oxford Properties & Finance Ltd. ("Oxford"), appeals the judgment of the Appellate Division of the United States District Court for the Territory of Guam in favor of appellees Minor M. Engle, deceased, represented by Milton E. Frank, administrator, and Engle's Appliance Parts, Inc. (collectively referred to as "Engle"), in Oxford's action for unlawful detainer. We have jurisdiction pursuant to 48 U.S.C. § 1424–3(c) (1988), and affirm.

## FACTS

On November 30, 1966, Santiago Castro and George Frazer entered into a lease of real property located in Dededo, Guam, which allowed Frazer to sublet the property to third parties. Subsequently, Frazer entered into a sublease agreement with Engle, the commencement date of which is at issue in this dispute. The lease provided that the sublease was to commence on November 1, 1967, and also stated that the sublease agreement was entered into "this 1st day of November, 1967." The "1st" was entered by hand in the typed document. However, the notarization form at the bottom of the document states:

> On this 22 day of December, 1969, before me, a Notary Public in and for the territory of Guam, personally appeared GEORGE H. FRAZER and MINOR M. ENGLE, known to me to be the persons whose names are subscribed to the with-

in instrument and acknowledged to me that they executed the same.

The date "22 day of December, 1969" is written by hand over the words "—day of November, 1967" and initialed by the notary. The recordation notice on the back of the document indicates that the sublease was recorded on December 29, 1969.

The sublease agreement provided for a nine year term and required rent in the amount of $100 a month. It further gave Engle the option of extending the lease for two additional terms of ten years each on the same terms and conditions as the original lease, except that the rent for any such extension would increase to $150 per month. The sublease required written notice to be given to Frazer sixty days before the termination of the sublease in order to exercise the option to extend.

At some time prior to 1977, Frazer assigned his interest in the sublease agreement to James S. Lee & Company ("Lee"). On February 1, 1977, Engle sent Lee a letter, which contained a $1,000 check to cover the rent due from January 1977 to October 1977, and stated the following:

> Enclosed is my check to cover lease payments until November this year. In November I will give you a check for $300.00 to bring me up to January 1, 1978. I will then give you a check for $1,800.00 for the year. As I like to pay as you know on a yearly basis. January to December.

Lee accepted the check. On October 5, 1977, Lee sent Engle a letter stating that Engle's sublease, which Lee claimed had commenced on November 1, 1967, had expired because Engle had failed to exercise his option to extend in a timely manner. The letter informed Engle that Lee was currently letting him lease the property on a month-to-month basis and asked him to renegotiate a new lease with Lee. The letter also returned the $300 rent check Engle had submitted for the months of November and December.

On November 8, 1977, Engle's attorney Stephen A. Cronin sent a letter contesting Lee's assertion that the sublease had expired. Cronin contended that the sublease

commenced on November 1, 1969, not November 1, 1967, as Lee had claimed in his prior letter. According to Cronin's letter, "the words in Paragraph 1 of the lease which states 'for a term of nine (9) years commencing on the 1st of November, 1967' was [sic] obviously a typographical error, which should have stated 'for a term of nine (9) years commencing on the 1st of November, 1969.'" The Cronin letter enclosed a check for $300 for the November and December rental payment. On November 10, 1977, an employee of Lee's returned Cronin's letter and the check. However, on January 6, 1978, Lee accepted a check for $1200 from Engle for the period between November 1, 1977 and October 31, 1978. The record does not indicate whether any communication between the parties accompanied acceptance of the check.

On July 28, 1978, Engle's attorney filed a "Notice of Exercise of Option to Extend" stating that Engle was exercising his right to extend the sublease for a ten-year period running from November 1, 1978 to October 31, 1988. Lee was served with a copy of the notice shortly thereafter. Lee communicated no objection to the notice.

Beginning with the month of November, 1978, Engle began to pay rent in the amount of $150 a month. At about this time, Lee assigned his interest in the sublease agreement to Oxford. Engle made payments of $1,800 a year to Oxford through June 1988. The rental receipts for this period refer to the payments as for "lease rental." In June 1988, Oxford recorded a "Notice Terminating Tenancy." In that notice, Oxford stated that it had elected to terminate Engle's tenancy, which it claimed was a tenancy at will, beginning August 1, 1988. Thereafter, on August 10, 1988, Engle filed a "Notice of Exercise of Option to Extend," a notice that indicated Engle's intention to extend the sublease for the period between November 1, 1988, and October 31, 1988. Oxford then filed this unlawful detainer action.

In the Superior Court of Guam, Oxford contended that the agreement between Frazer and Engle expressly provided that the sublease covered a term of nine years

beginning on November 1, 1967, and expiring on October 31, 1976. Because Engle had not provided the requisite 60-day written notice to exercise his option to extend before the expiration of his lease, Oxford argued that Engle's lease expired and his tenancy thereafter became a tenancy at will terminable on 30 days written notice. In contrast, Engle contended that the original lease contained a typographical error and was intended to commence on November 1, 1969; accordingly, he argued, the option to extend was timely exercised. In the alternative, Engle argued, any failure to timely notify Oxford had been waived by the actions of Oxford and its predecessor in interest.

At the time of trial, neither Engle nor Frazer was alive. The trial court therefore relied largely on stipulations, admissions in the pleadings, and a response to a request for admissions. It ultimately determined that the sublease was intended to commence in 1969 rather than 1967 and, based on this finding, entered judgment in favor of Engle. Because of its finding on the issue of the commencement date of the sublease, it stated it had no occasion to consider Engle's argument of waiver. A three-judge panel of the Appellate Division of the United States District Court for the Territory of Guam affirmed.

## DISCUSSION

■ On appeal, we review legal determinations of the Appellate Division of the United States District Court for the Territory of Guam *de novo*, even where the questions concern interpretations of the law of Guam. *People of the Territory of Guam v. Yang*, 850 F.2d 507, 509–11 (9th Cir.1988). We reverse findings of fact only when they are clearly erroneous. *People of the Territory of Guam v. Ichiyasu*, 838 F.2d 353, 355 (9th Cir.1988). A finding is "clearly erroneous" when, "although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Miller v. United States*, 587 F.2d 991, 994 (9th Cir.1978) (quoting *United States v. United States Gypsum Co.*, 333

U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)).

Oxford's primary contention on appeal is that the record contains insufficient evidence to support the Appellate Division's judgment in favor of Engle. Oxford argues that scrutiny of the record, if limited to evidence that could properly be considered by the district court, does not support a finding that the lease began to run on November 1, 1969 rather than on November 1, 1967.

■ While Oxford raises serious issues regarding the sufficiency of the evidence supporting the district court's judgment on the grounds stated, we need not here resolve these issues. Whether or not the evidence would support the district court's determination on the issue of the lease's date of commencement, we find that the record clearly supports the proposition that Oxford and its successors waived any breach by Engle of the sublease's renewal conditions. Accordingly, we exercise our power to affirm the lower court's decision on the alternative basis of waiver. *See Golden Nugget, Inc. v. American Stock Exch., Inc.*, 828 F.2d 586, 590 (9th Cir.1987) (affirmance on alternate grounds appropriate where the record adequately establishes material facts and issues are purely legal).

■ Our search has unearthed no Guam law on the issue of waiver of a requirement of notice to extend a lease. However, it is a generally accepted principle of law that such a notice requirement is intended to benefit the lessor and that, accordingly, the lessor may waive this requirement. *See, e.g., McIntyre v. Coker*, 274 Ala. 457, 150 So.2d 220, 224 (1963); *Fun Prods. Distribs. v. Martens*, 559 P.2d 1054, 1058 (Alaska 1977); *Gruber v. Castleberry*, 23 Ariz.App. 322, 533 P.2d 82, 84 (1975); *Tay–Holbrook, Inc. v. Tutt*, 218 Cal. 600, 24 P.2d 463, 465 (1933); *Lakeside Dairies v. Gregersen*, 217 La. 510, 46 So.2d 752, 756 (1950); *Armstrong v. Hendrickson*, 160 Me. 230, 202 A.2d 558, 559–60 (1964); *Wolf v. Tastee Freez*, 172 Neb. 430, 109 N.W.2d 733, 737 (1961); *Playmate Club, Inc. v. Country Clubs, Inc.*, 62 Tenn.App. 383, 462 S.W.2d

890, 894 (1970); 51 C.J.S. Landlord and Tenant § 62d, at 611. Such a waiver may be either express or implied. *See Playmate Club*, 462 S.W.2d at 894; 51 C.J.S. *Landlord and Tenant* at 611 ("A requirement of written notice may be waived by parol, and a waiver of notice may be express or may be inferred from the conduct of the parties"). We see no reason that this principle of law should not apply in Guam.

■ Whether a lessor has implicitly waived the notice requirement must be determined based on the facts of the individual case that bear on the intent of the parties. Courts have generally considered the following circumstances to be relevant to the determination of whether a notice requirement for extension of the lease has been waived by the lessor: whether the lessor has continued to accept rent payment from the lessees after the date that the original agreement would have expired but for a renewal, *McIntyre*, 150 So.2d at 224; *Fun Products*, 559 P.2d at 1058; *Tay–Holbrook, Inc.*, 24 P.2d at 465; *Lakeside Dairies*, 46 So.2d at 756; *Armstrong*, 202 A.2d 558; *Playmate Club*, 462 S.W.2d at 894; whether the rent increased by the amount established for the renewal period in the lease, *Tay–Holbrook, Inc.*, 24 P.2d at 465; *H.H. Rosin Co. v. Chavin*, 257 A.2d 228, 230 (Del.Sup.1969); *Harris v. Gindes*, 265 A.2d 598, 599 (D.C.1970); *I.B. Realty Corp. v. Holland Furnace Co.*, 33 Misc.2d 419, 226 N.Y.S.2d 993, 994 (1962); whether the tenant remained in continual possession of the premises, *McIntyre*, 150 So.2d at 224; *I.B. Realty Corp.*, 226 N.Y.S.2d at 994; *Playmate Club*, 462 S.W.2d at 894; the extent, if any, of objections by the lessor to the continuance of tenancy after the original lease term had expired, *Fun Products*, 559 P.2d at 1058; *Lakeside Dairies*, 46 So.2d (752) at 756. *See generally*, Annotation, *Waiver or Estoppel as to Notice Requirement for Exercising Option to Renew or Extend Lease*, 32 A.L.R. 4th 452 (1990). We look at the facts with these factors in mind.

By Oxford's count, the original term of the lease expired on October 30, 1976. Yet Lee, Oxford's predecessor in interest, accepted Engle's rent without objection until almost a year after that date. Moreover, while Lee once asserted that Engle failed to timely extend the lease and rejected Engle's rent for a brief period, following Engle's dispute of this claim, he resumed accepting Engle's rent with no further objection for more than ten years. No objection was made to the "Notice of Exercise of Option to Extend" filed on July 28, 1978. In addition, the level of payment accepted during this period corresponded with the amount due under the lease's terms. No statement was ever made to Engle that acceptance of payment did not constitute payment under the lease or was not a waiver of the right to notification of renewal.

■ Based on these facts, we conclude that, as a matter of law, Oxford, both through its own actions and those of its predecessor in interest, Lee, waived any breach of the notification requirement.[1] The only reasonable view that can be taken of the parties' conduct is that the parties renewed the lease according to the terms set for such a renewal. Whether or not Engle's notice to extend was timely, is immaterial. The breach of any requirement of notice to renew that may have occurred was long ago waived.

AFFIRMED.

---

1. The statute of frauds poses no bar to our determination of waiver. Guam Civil Code § 1624 provides that an agreement for the lease of property for a period of more than a year must be in writing to be enforced. While a contract which is required by the statute of frauds to be in writing may not ordinarily be modified by a subsequent oral agreement, the exercise of an option to renew, even when by oral notice or when notification is waived, is deemed enforceable as not violative of the statute of frauds. *See Wolf v. Tastee Freez Corporation of America*, 109 N.W.2d at 737; 37 C.J.S. *Frauds, Statute of* § 113 (1943 & 1991 supp.); *see also Giardina v. Farms Co.*, 25 Md.App. 201, 333 A.2d 366, 370 (1975) (quoting *Bio–Ramo Drug Co. v. Abrams*, 229 Md. 494, 184 A.2d 831 (1962).