CALVIN FLINT, PLAINTIFF AND RESPONDENT, *v.* PETE MIN-COFF, DEFENDANT AND APPELLANT.

No. 10054.
Submitted March 28, 1960. Decided June 9, 1960.
Rehearing denied July 14, 1960.
353 P.2d 340.

Hugh J. Lemire, Colgrove & Brown, Miles City, Hugh J. Lemire argued orally for appellant.

Sandall, Moses & Cavan, Billings, J. J. Cavan, Jr. argued orally for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment entered upon a jury verdict. The jury found for the plaintiff and assessed his· damages at $13,540.

Plaintiff's complaint alleged that on March 3, 1956, plaintiff and defendant entered into a lease agreement by which the defendant leased to plaintiff certain lands in Garfield County for the period from April 1, 1956, to March 31, 1957. The lease also provided for four subsequent renewals each being of the same duration and required the lessee, plaintiff herein, to give notice in writing of his intention to renew at least 30 days before the expiration of the existing lease period.

On January 9, 1957, more than 30 days before the expiration date of the existing lease, plaintiff, at defendant's request, wired $1,000 to the defendant in Las Vegas, Nevada. Plaintiff alleged that this $1,000 was sent pursuant to a verbal agreement that this sum would be applied on the amount due for the next one-year period commencing on April 1, 1957. Plaintiff gave no written notice of his intention to renew the lease and subsequently defendant gave notice that because of this failure the lease would be cancelled as of March 31, 1957.

Defendant's answer, in addition to relying upon the failure to give written notice, set up an affirmative defense in which he alleged that the parties had entered into another written agreement which provided that the $1,000 previously paid the defendant would apply as a rental payment for the month of April 1957. This agreement made other provisions for the removal of plaintiff's livestock from the premises and also contained the following language:

"It Is Further Agreed by and between the parties hereto that when the sheep and cattle of the Lessee have been re-

moved from said lands that all of the agreements heretofore entered into between the parties hereto shall be terminated and cancelled, and no claims shall be made by either party as a result of said agreements, with the understanding, however, that the Lessee shall have a reasonable not less than 60 days time to remove the personal property of hay, feed, feed bunks, water tanks, (all water tanks purchased and placed on said lands by Lessee), all ranch and farm equipment placed on said lands by Lessee, and all household furnishing in house at Cohagen, Montana, and on ranch, that have been placed therein by Lessee.''

This agreement was signed by plaintiff and it is defendant's contention that by this agreement plaintiff abrogated any rights which he might have had under the lease.

Plaintiff's reply alleged failure of consideration to support the agreement; that such agreement was an accord and satisfaction of the dispute over the lease, but that defendant had not performed the obligations which he incurred in the agreement.

Defendant relies mainly upon two specifications of error: (1) That the evidence relating to the verbal agreement was inadmissible to alter the terms of the written lease agreement; and (2) That the subsequent agreement entered into by the parties was in fact a substituted contract and not an accord and satisfaction.

Concerning the first specification of error set out above, the jury was instructed as follows:

''In this case, if you find by a preponderance of the evidence that the plaintiff, Calvin Flint, before March 1, 1957, orally notified the defendant of his intention to renew said lease and if you further find by a preponderance that the defendant accepted such notification without objection, then you are instructed that the defendant waived his right to require the written notice specified in said lease agreement.''

The general rule regarding waiver of notice is set out in 51 C.J.S. Landlord and Tenant, § 62d, p. 611:

"The provisions of a lease requiring notice from the lessee of an election or intention to renew or extend the term are for the benefit of the lessor and therefore the notice itself, or any other matter going to the sufficiency thereof, may be waived. A requirement of written notice may be waived by parol, and a waiver of notice may be express or may be inferred from the conduct of the parties."

This same authority in discussing the statute of frauds, states that "Where the extended term of the lease is fixed by and is a part of the original written lease, and comes into existence merely by the lessee exercising his option and giving the required notice, no question as to the application of the statute of frauds arises. The lessee holds for the extended term by virtue of the original lease which is in writing and which satisfies the statute; and the execution of a new lease is not required. This rule may apply even where the notice of intention to exercise the option is verbal, as where the provisions of the lease as to written notice are waived, or where there is no provision in the lease as to whether the notice shall be written or verbal." 37 C.J.S. Frauds, Statute of § 113, p. 605.

Though the instant case is not governed by the statute of frauds, the lease being for less than the statutory period, the reasoning of the above discussion applies to this case.

Defendant relies upon section 13-907, R.C.M.1947, which provides as follows: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."

The waiver of the requirement of written notice, however, was fully executed when the money was received by the defendant. There is a conflict in the evidence regarding the telephone conversation but there was sufficient testimony to enable the jury to determine that the defendant did agree

to renew the lease during the course of this conversation. When the money was paid the oral agreement became fully executed and operated to renew the lease for the subsequent year at that time. Griffiths v. Thrasher, 95 Mont. 210, 26 P.2d 995. Cases decided under section 13-907 where the oral agreement was not fully executed are not in point. The evidence of this oral agreement was properly before the jury and there was no error in the instruction relating to waiver.

The second question presented for our determination is whether the subsequent agreement was in fact a substituted contract. If it was then the rights and liabilities of the parties under the lease agreement are extinguished. If it was not, then the question becomes whether this was an accord which was satisfied by the mutual promises of the agreement, or an accord executory which would only extinguish the pre-existing rights and liabilities of the parties upon full and complete performance by both parties.

Section 58-501, R.C.M.1947, defines an accord as follows:

''An accord is an agreement to accept, in extinction of an obligation, something different from or less than that to which the person agreeing to accept is entitled.''

''Though the parties to an accord are bound to execute it, yet it does not extinguish the obligation until it is fully executed.'' R.C.M.1947, § 58-502.

The general rule is stated in 10 A.L.R. 222, as follows:

''The rule is universally recognized that (except where the new agreement is itself accepted as a satisfaction: * * *) the failure to make a payment or otherwise perform an act required by a new agreement entered into in satisfaction of a debt or claim leaves such an agreement a mere executory accord without satisfaction, and as such it constitutes no bar to the enforcement of the original debtor claim.''

Professor Corbin, in his comprehensive treatise on contracts, states that ''The term 'accord executory' is and always has

been used to mean an agreement for the future discharge of an existing claim by a substituted performance. In order for an agreement to fall within this definition, it is the promised performance that is to discharge the existing claim, and not the promise to render such performance. Conversely, all agreements for a future discharge by a substituted performance are accords executory." 6 Corbin, Contracts, § 1268, pp. 50, 51.

In the instant case, the agreement was made in order that the plaintiff might have time to get his stock and personal property removed from the leased property. All parts of the agreement contained obligations by both parties relating to the removal of this stock and property. In this connection the jury was instructed as follows:

"If you find by a preponderance of the evidence that the parties intended plaintiff's Exhibit 'C' to provide that certain things shall be done or permitted to be done by the parties thereto before the obligations under the lease agreement shall be extinguished, namely:

"1. The Flint cattle and sheep are to be removed from the leased premises.

"2. The defendant is to permit the plaintiff to remove certain personal property from the leased premises.

"3. The defendant or his employees are not to interfere with the plaintiff's operation on the lease.

"If you find by a preponderance of the evidence that the defendant failed to perform any of the above obligations required of him by Exhibit 'C', no matter what his reasons may be, then you are instructed that the terms of Exhibit 'C' have not been satisfied and the plaintiff is not prevented thereby from suing for the breach of the covenant to renew contained in the lease agreement plaintiff's Exhibit 'A'."

The court also gave an instruction which was offered by the defendant and read as follows:

"You are instructed that before you can consider the

question of damages you must first determine: * * *

"2. Whether the agreement Exhibit 'C' was accepted by the parties in complete satisfaction of all prior contract obligations.

"3. Whether the agreement Exhibit 'C' was fully performed. * * *

"If you find that the agreement Exhibit 'C' was accepted in complete satisfaction of all prior obligations by the parties then your verdict must be for the defendant.

"If you find that Exhibit 'C' was fully performed by the defendant, then your verdict must be for the defendant."

These instructions correctly embodied the theory of the case; that of accord and satisfaction and not substituted contract.

■■ Though an accord executory operates as a temporary bar to any cause of action on the prior agreement, this is true only as long as there is no breach of the provisions of the accord. Upon this breach the prior claim is again enforceable. There was ample evidence from which the jury could determine that the defendant had breached one or more of the provisions of the accord.

The record reveals by substantial evidence, if believed, that the defendant interfered with the plaintiff's operation. After plaintiff rounded up his cattle for moving, the defendant came to the premises and forced plaintiff's cowhands to move the cattle several miles where they were scattered and some of them lost and never recovered. At a later time the defendant refused to permit the movement of the cattle until an asserted claim was paid. Then the defendant refused to permit the plaintiff from removing the personal property referred to in Exhibit "C". Without reciting the testimony, we observe that there was much testimony proving a breach by the defendant.

Finding no reversible error in the record before us, the judgment is affirmed.

557

MR. CHIEF JUSTICE HARRISON, MR. JUSTICE ADAIR, THE HONORABLE NAT ALLEN, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, and THE HONORABLE C. B. ELWELL, District Judge, sitting in place of MR. JUSTICE ANGSTMAN, concur.