**FUN PRODUCTS DISTRIBUTORS, INC. and Nick J. Rauch, jointly and Individually, Appellants,**

v.

**Wallace E. MARTENS, Appellee.**

No. 2694.

Supreme Court of Alaska.

Feb. 9, 1977.

---

Stan B. Stanfill, Hahn, Jewell & Stanfill, Anchorage, for appellants.

Harland W. Davis, Anchorage, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

ERWIN, Justice.

The defendants, Fun Products Distributors, Inc. and Nick Rauch, appeal from a Judgment and Order of Eviction entered against them in this forcible entry and detainer action on April 22, 1975, by District Court Judge Warren A. Tucker. The Judgment and Order of Eviction were affirmed by Superior Court Judge Ralph E. Moody on September 19, 1975. We reverse the decision.

Appellants' argument on appeal is that the trial court erred by refusing to hold that as a matter of law appellee's predecessor in interest, Alaska Seed and Nursery, Inc., had waived a 90-day written notice requirement for renewal of the two leases under which appellants had originally taken possession of the subject property. Appellants claim, therefore, that at the time this

action was instituted, they occupied the subject property under valid, renewed leases and that appellee, Wallace E. Martens, purchased the property subject to those leases.

In March, 1966, Alaska Seed and Nursery, Inc., appellee's predecessor in interest, leased to Thermasol Sales of Alaska, Inc., a portion of a 6.2 acre parcel of land owned by Alaska Seed. The property is located in Anchorage just south of 36th Avenue on the west side of the old Seward Highway. The lease included use of the buildings on the property, and the lease term was five years, terminating on March 9, 1971. On April 10, 1967, Thermasol Sales assigned the 1966 lease to W. G. Lucas and appellants Fun Products Distributors, Inc., and Nick Rauch.

In September, 1967, Alaska Seed leased to appellants and W. G. Lucas a warehouse and another portion of the 6.2 acre parcel. The lease term was just over 3½ years, terminating concurrently with the 1966 lease on March 9, 1971.

Both leases contained a provision for renewal at the lessees' option for an additional five-year term. In order to renew, the lessees were required to give Alaska Seed written notice of intent to renew at least three months prior to the March 9, 1971, expiration date. The terms and conditions of the lease during the renewal period were to be the same as those set out for the initial period, except for the amount of the rent. The rent for the renewal period was to be determined by mutual agreement; if Alaska Seed and the lessees were unable to agree on the renewal rent, they were to jointly engage an appraiser who would make a binding determination of fair rental value.

As the expiration date for the leases approached, appellant Nick Rauch began negotiating with Alaska Seed for the possible purchase by Fun Products of the entire Seward Highway parcel. At a meeting of Alaska Seed directors and shareholders on December 15, 1970, Mr. Crocket Metcalf, an Alaska Seed director and shareholder, reported on a meeting he had had with appellant Rauch concerning possible purchase of the Seward Highway property by Fun Products. At a second meeting held on December 29, 1970, Alaska Seed decided to extend to Nick Rauch an offer to purchase the property. Both of these meetings took place after the deadline stipulated in the lease for notice of renewal, December 9, 1970.

On January 4, 1971, Nick Rauch, as President of Fun Products, wrote to Crocket Metcalf. His letter stated that the Fun Products board of directors had approved "picking up the option for an additional five years." It also noted, however, that Fun Products remained "more interested in purchasing the entire property package as [had been earlier] discussed."

The letter did not mention renegotiation of the rental amount, nor did it excuse or mention Fun Products' failure to comply with the three-month notice of renewal requirement. The letter was signed only by appellant Rauch in his capacity as President of Fun Products; Rauch did not sign the letter individually, nor did he mention his colessee, W. G. Lucas.

The trial court found that the letter from appellant Rauch "only represented an intention to renew on the part of one of the lessees, viz., Fun Products Distributors, Inc." The court also found that the letter "principally contained an intention to purchase the leased property."

Fun Products continued to occupy the Alaska Seed property after the lease expiration date. Appellant Rauch's attempts to purchase the Seward Highway property also continued after the lease expiration date. In May, 1971, Rauch presented an offer to purchase the property at the annual Alaska Seed meeting. A motion to accept his offer failed.

The minutes of that meeting reflect that Crocket Metcalf, Vice President of Alaska Seed, reported to the members that the "Fun Products Corp. lease was up and they are on a month to month basis." However, at trial Metcalf testified that he was unable to recall having given such a report and unable to recall ever having given notice to

Fun Products that its tenancy was month to month. Metcalf also testified that *he* believed Fun Products held under a lease.

At trial appellant Rauch testified that no one at Alaska Seed had informed him that Alaska Seed considered Rauch and his colessees to have become month to month tenants in March, 1971. Apparently appellant Rauch claimed to have first received notice of his lessor's claim that Fun Products was a month to month tenant when appellee Wallace Martens met with Rauch in December, 1973, to discuss Martens' purchase of the property from Alaska Seed.

From the time Fun Products went into possession of the Seward Highway property in 1967 until the time appellee Martens purchased the property in late 1973, Alaska Seed routinely accepted monthly rental payments from Fun Products. These payments were labelled "lease payments" by appellants, and Alaska Seed apparently never objected to this terminology.

In December, 1973, appellee Wallace Martens purchased the Seward Highway property from Alaska Seed. He immediately informed Fun Products that in his opinion Fun Products occupied the property as a month to month tenant rather than under a lease. Martens notified Fun Products that as of April 1, 1974, the rent would be doubled to $2,700 per month.

Fun Products refused to pay the increased rent, but continued to pay $1,350 monthly. On June 18, 1974, Martens delivered to appellant Rauch and to his attorney a notice to quit and vacate the Seward Highway property by July 20, 1974. Appellants did not vacate the premises, and appellee Martens commenced this forcible entry and detainer action on July 22, 1974.

The case was tried by District Court Judge Warren A. Tucker in August and September, 1974. Judge Tucker found that appellants had become month to month tenants as of March 9, 1971, because they had never effectively renewed their leases and because their holding over did not constructively renew the leases. Judge Tucker also found that the appellants had become delinquent in their rent by refusing to pay the increased monthly rent demanded by appellee.

On April 22, 1975, Judge Tucker entered judgment for Wallace Martens and ordered defendant-appellants to quit the Seward Highway premises by May 8, 1975. Appellants were also ordered to pay appellee delinquent rent in the amount of $9,450. Judge Tucker's decision was affirmed in its entirety by Superior Court Judge Ralph E. Moody. On September 25, 1975, appellants filed their notice of appeal with this court.

Appellants' claim on appeal is that the trial court erred in finding that they had become month to month tenants on the Seward Highway property in March, 1971. Appellants assert that based on the findings of fact made by Judge Tucker, they had effectively renewed the two leases under which they occupied the Martens property. They argue that as a matter of law their continued holdover on the property and continued payment of rent after Martens' predecessor had received their tardy renewal notice constituted a valid renewal of the leases.

In the instant case Judge Tucker found that

[d]efendants [Fun Products and Nick Rauch] never gave timely written notice of their intention to renew the two leases, although a letter dated January 4, 1971, was sent to the then owner/landlord's agent, Crockett [sic] Metcalf. That letter only represented an intention to renew on the part of one of the lessees, viz., Fun Products Distributors, Inc. That letter also principally contained an intention to purchase the leased property.

On the basis of this finding of fact, Judge Tucker reached the legal conclusion that the appellants had become month to month tenants on the Seward Highway property in March, 1971, because they had never effectively renewed the two leases under which they occupied the property.

The renewal option in the 1967 lease, which was drafted specifically for appellants and Martens' predecessor, provided that "lessees shall give notice in writing of their intention to renew said lease to the

lessor . . . at least three months prior to the expiration of the initial term . . . ." In addition, both lease options required renegotiation of the rental amount for the renewal term.

When appellant Rauch finally sent the letter which appellants claim was meant to serve as their notice of renewal, it did not conform to the terms in the renewal options. The letter was almost a month late. It did not mention renegotiation of the amount of rental. The letter was signed only by appellant Rauch in his capacity as President of Fun Products; Rauch did not sign the letter individually, nor did he mention his colessee, W. G. Lucas. The letter also stated that Fun Products remained "more interested in purchasing the entire property package."

Thus it is clear that appellants failed in several respects to comply with the renewal provisions. Therefore, the trial court's finding that appellants never gave timely written notice of renewal is well supported by the record. They assert, however, that appellee's predecessor waived the requirement of timely written notice.

When a lease contains a provision for renewal at the lessee's option, a requirement that the lessee give written notice of exercise of the option is for the lessor's benefit.[1] Consequently the lessor may waive the requirement for written notice.[2]

Whether there has been such a waiver by the lessor is a question of fact to be determined with reference to the intention of the parties.[3]

Since the determination of whether there was a waiver is a question for the trier of fact, this court may not set aside a trial court finding of waiver unless it is clearly erroneous.[4] A finding is not clearly erroneous unless this court is left with "the definite and firm conviction on the entire record that a mistake has been committed."[5] If we are left with such a conviction, a finding is clearly erroneous even though there was evidence to support it.[6]

The trial court in this case made no specific finding on the issue of waiver. However, rejection of the claim of waiver is implicit in the court's finding that appellants became commercial month to month tenants in March, 1971. That finding is clearly erroneous. We hold that as a matter of law where a lessor accepts lease payments for a substantial period of time (approximately three years) after receipt of a tardy notice of renewal, without advising the lessees that the late tender of notice was considered ineffective and without advising the lessees that the notice was ineffective because it was executed by only one of the lessees, the lessor has waived the lease requirement for notice by the lessees of renewal at or within a certain time.[7]

1. *Armstrong v. Hendrickson*, 160 Me. 230, 202 A.2d 558, 559–560 (1964), quoting *Medomak Canning Co. v. York*, 143 Me. 190, 57 A.2d 745, 747 (1948).

2. *Armstrong v. Hendrickson*, 160 Me. 230, 202 A.2d 558, 559–560 (1964), quoting *Medomak Canning Co. v. York*, 143 Me. 190, 57 A.2d 745, 747 (1948). See also *Gruber v. Castleberry*, 23 Ariz.App. 322, 533 P.2d 82, 84 (1975); *Flint v. Mincoff*, 137 Mont. 549, 353 P.2d 340, 342 (1960); *Wolf v. Tastee Freez Corporation of America*, 172 Neb. 430, 109 N.W.2d 733, 737 (1961); *Playmate Club, Inc. v. Country Clubs, Inc.*, 62 Tenn.App. 383, 462 S.W.2d 890, 894 (1970).

3. *Gruber v. Castleberry*, 23 Ariz.App. 322, 533 P.2d 82, 84 (1975); *Armstrong v. Hendrickson*, 160 Me. 230, 202 A.2d 558, 560 (1964), quoting *Medomak Canning Co. v. York*, 143 Me. 190, 57 A.2d 745, 748 (1948). See also *National Bank of Alaska v. J.B.L. & K. of Alaska, Inc.*, 546 P.2d 579, 587 (Alaska 1976); *King v. Petroleum Services Corp.*, 536 P.2d 116, 118–119 (Alaska 1975).

4. Alaska R.Civ.P. 52(a); *Peters v. Juneau-Douglas Girl Scout Council*, 519 P.2d 826, 833 (Alaska 1974); *Alaska Foods, Inc. v. American Mfr.'s Mut. Ins. Co.*, 482 P.2d 842, 843 (Alaska 1971).

5. *Alaska Foods, Inc. v. American Mfr.'s Mut. Ins. Co.*, 482 P.2d 842, 848 (Alaska 1971).

6. *Id.*

7. *Playmate Club, Inc. v. Country Clubs, Inc.*, 62 Tenn.App. 383, 462 S.W.2d 890 (1970). See also *Armstrong v. Hendrickson*, 160 Me. 230, 202 A.2d 558 (1964).

Here notice of intention to exercise the option was furnished on January 4, 1971. Lease payments, so designated, were continuously accepted with no objection as to the method of exercising the option or the amount of the monthly payments until after sale of the property in December, 1973. In fact, the original lessors, who received the notice of intention to exercise the option, never objected to its form even though they continued in ownership for almost three years after receipt of the notice. Under these circumstances, the defects in the notice were waived as a matter of law.

The trial court determination herein that appellants became month to month tenants in March, 1971, because they failed to effectively renew the two leases on appellee's property is not supported by the evidence. The evidence demonstrates that as a matter of law appellee's predecessor waived the notice of renewal requirement in the two leases. Therefore, the superior court's affirmance of the district court judgment is reversed and the matter remanded to the superior court with directions to remand the matter to the district court for vacation of the judgment previously entered and for the entry of a judgment in favor of appellants.