**Dana KOPANUK, Petitioner,**

v.

**AVCP REGIONAL HOUSING AUTHORITY, Respondent.**

No. S–6432.

Supreme Court of Alaska.

Sept. 15, 1995.

James J. Davis, Jr. and Deborah Reichard, Alaska Legal Services Corporation, Bethel, and Carol H. Daniel and Joseph D. Johnson, Alaska Legal Services Corporation, Anchorage, for petitioner.

Kim Dunn, Birch, Horton, Bittner & Cherot, Anchorage, for respondent.

W. Michael Stephenson, Jermain, Dunnagan & Owens, Anchorage, for amicus curiae Copper River Basin Regional Housing Authority.

James E. Torgerson, Assistant U.S. Attorney, and Robert C. Bundy, United States Attorney, Anchorage, and Althea M. Forrester, Attorney, and Nelson A. Diaz, General Counsel, Housing & Urban Dev., Washington, DC, for amicus curiae United States.

Before MOORE, C.J., RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

### OPINION

COMPTON, Justice.

### I. INTRODUCTION

Dana Kopanuk entered into a contract regarding home occupancy with the Association of Village Council Presidents Regional Housing Authority (AVCP RHA). Upon breach by Kopanuk, AVCP RHA initiated a forcible entry and detainer (FED) action in district court. Kopanuk challenged the district court's subject matter jurisdiction, arguing that equitable interests were at issue. He asserted that the contract was not a lease with an option to purchase, but rather an installment contract for sale of real property. The district court denied his challenge and the superior court affirmed. We granted Kopanuk's petition for hearing, Appellate Rule 302(b)(1), and now reverse.

### II. FACTS AND PROCEEDINGS

In 1982 Kopanuk entered into an agreement with AVCP RHA regarding acquisition of a home. This agreement is titled a "Mutual Help and Occupancy Agreement" (MHOA). The agreement, while signed with a state agency, is part of a federal Housing and Urban Development (HUD) program to aid low-income Indian and Native families under the Indian Housing Act, P.L. No. 100–358. AVCP RHA was chartered in order to provide low-cost housing in certain villages. AS 18.55.995, .996.

The MHOA is a form contract provided by HUD. HUD requires the MHOA to be used in all cases where the agency is receiving Mutual Help and Occupancy (MHO) funds.

The MHOA requires a non-refundable land contribution, which in this case was contributed by a Native corporation. The MHOA is self-described as a lease, although it contains provisions typical of both installment contracts and leases. See infra § II.B. Monthly payments are required. A minimum monthly payment goes to an administrative charge, and payments over this amount are credited to an "Equity Payments Account." The required monthly payment is adjusted for each contractee, and depends on his or her income. Voluntary overpayments are credited to another equity payments account. The home can be purchased at any time if several conditions are met. The purchase price declines over 25 years, eventually reaching zero. Upon termination, amounts in equity payments accounts will be refunded to the homebuyer after deducting amounts necessary to make repairs or cover unpaid required monthly payments.

In either 1991 or 1992, Kopanuk fell behind in his payments. He also left the home for an extended period, an alleged breach of the MHOA. In mid–1992 AVCP RHA filed an FED action in district court in Bethel seeking to evict Kopanuk. At the hearing, the parties negotiated a settlement. This settlement was entered as a Conditional Order for Possession. The order provided that AVCP RHA would recover possession unless Kopanuk paid his back payments, returned to Mountain Village, minimized the noise from the house, and "actively communicate[d] and cooperate[d]" with AVCP RHA. Kopanuk failed to return to Mountain Village and AVCP RHA prepared to enforce the order. In April 1993 Kopanuk filed a Civil Rule 60(b) motion to vacate the order. He challenged the subject matter jurisdiction of the district court, arguing that the agreement was not a lease but rather a mortgage, something not cognizable in an FED action. The district court denied Kopanuk's motion, holding that the MHOA was a lease/purchase agreement, properly the subject of an FED proceeding.

On appeal to the superior court, the district court judgment was affirmed. The court held that the MHOA was a lease/option agreement, with no guarantee of eventual

vesting of title in Kopanuk. We granted Kopanuk's petition for hearing.

## III. DISCUSSION

### A. Standard of Review

■ The standard of review is *de novo*. In *Kennecorp Mortgage & Equities, Inc. v. First National Bank of Fairbanks*, 685 P.2d 1232 (Alaska 1984), appellants challenged the trial court's denial of a Rule 60(b)(4) motion to set aside the default judgment. We noted that, "In reviewing the denial of a Rule 60(b)(4) motion, this court does not defer to the discretion of the trial court." *Id.* at 1236. We give no deference to the superior court because "the validity of a judgment is strictly a question of law." *Id.* (quoting *Aguchak v. Montgomery Ward Co.*, 520 P.2d 1352, 1354 (Alaska 1974)). According to *Perry v. Newkirk*, 871 P.2d 1150, 1153 n. 5 (Alaska 1994), "[v]oidness under 60(b)(4) also encompasses the concept of lack of subject matter jurisdiction."

■ Interpretation of a contractual agreement presents a question of law. *Aviation Assocs., Ltd. v. TEMSCO Helicopters, Inc.*, 881 P.2d 1127, 1130 (Alaska 1994). When reviewing questions of law, this court applies its independent judgment. *Summers v. Hagen*, 852 P.2d 1165, 1168–69 (Alaska 1993).

### B. The District Court Lacked Jurisdiction to Adjudicate the Dispute

■ District courts are courts of limited jurisdiction. AS 22.15.050. District courts do not have jurisdiction over "an action in which the title to real property is in question" or "actions of an equitable nature, except as otherwise provided by law." AS 22.15.050(1), (2).[1] Kopanuk invokes both of these prohibitions in his brief. He claims that title is in dispute because he has "equitable ownership interests" in the house. We address only whether this action involves equitable ownership interests.

■ The district court's jurisdiction depends upon whether equitable interests exist. Typically a lease will not give rise to equitable interests in the lessee; however, an installment contract often will give rise to equitable interests in the purchaser. *See* 3 Richard R. Powell, *Powell on Real Property* 37–155 (1994). We noted the differences between installment and option contracts in *Dillingham Commercial Co., Inc. v. Spears*, 641 P.2d 1 (Alaska 1982):

> The purchaser under an installment land contract is treated as the equitable owner and the vendor as holding the bare legal title merely as security for the purchase price. In contrast, an optionee under a purchase option holds only a contractual right to the land.

*Id.* at 7 n. 7 (citations omitted).

Kopanuk argues that the contract at issue is more like an installment contract than a lease/option contract, and urges that the substance of the contract be examined. Conversely, AVCP RHA argues that the contract is a lease-option.

■ Kopanuk emphasizes several contract provisions as evidence that the contract is an installment contract. First is use of the word "homebuyer" throughout the agreement.[2] Second is the non-refundable contribution of land. Third is the existence of "equity accounts" for holding payments in excess of a certain amount. Fourth is the lack of a payment required to exercise the purchase option, if exercised after twenty-five years. Fifth is the ability to purchase the home before the price drops to zero by paying the declining balance. Sixth is lan-

1. As a preliminary matter, the nature of FED jurisdiction must be clarified. In *Vinson v. Hamilton*, 854 P.2d 733, 737 (Alaska 1993), this court held that "in an FED hearing, an award of possession constitutes equitable relief." AVCP argues that this holding means that "[t]he statutory power to hear FED proceedings simultaneously grants power to hear an equitable action." Although an FED action may result in equitable relief, it is a swift and summary proceeding. FED actions are unsuited for resolution of more complex inquiries, such as when equitable ownership interests are at stake. Therefore, although AS 22.15.030(a)(6) specifically grants the district court power to hear FED actions, this is not a grant of jurisdiction over all equitable actions.

2. "Homebuyer" is defined as "The person(s) who has executed this MHO agreement ... and who has not yet achieved homeownership."

guage in the contract stating that a "home-buyer" "must purchase" the home if certain conditions are met, such as ability to meet the routine costs of ownership.

AVCP RHA emphasizes other provisions in support of its position. First is a list of homebuyer obligations similar to those in the Uniform Residential Landlord and Tenant Act, citing AS 34.03.120 and MHOA § 5.4.[3] Second is variable monthly payments changeable at AVCP RHA's discretion. Third is a counseling and inspection requirement. Fourth is the income reporting requirement and the restrictions on who may reside in the home. Fifth is the fact that no subletting or assignment is allowed. Sixth is the housing authority's control of insurance. Seventh is detailed termination information.

■ The MHOA is a hybrid contract, containing provisions typical of both lease/option contracts and installment contracts. Indeed, a contract more difficult to categorize is hard to imagine. However, we need not determine the exact label to be applied to the contract, as we conclude that the contract creates equitable interests, or potential equitable interests, in the homebuyer, which preclude the district court from hearing the case. One of the justifications for FED actions is the lack of equity held by the tenant-in-possession. This is not the case here. Equity may exist in fact since the "homebuyer" has put up land for a "down payment." Furthermore, a person who maintains property over a period of years may have equity in the appreciated value of that property. Since the district court lacks jurisdiction over equitable actions, AS 22.15.050(2), the judgment of the superior court is REVERSED.[4]

---

3. Specifically, keeping the house clean and safe, disposing of waste properly, using appliances reasonably, refraining from damaging the property, avoiding disturbing neighbors, and refraining from illegal activity. AS 34.03.120(a)(1)–(6); MHOA 5.4(e)–(j).

4. The United States, as amicus curiae, argues that HUD has consistently interpreted the MHOA program to be a lease program. The HUD regulations are irrelevant, as we hold under state law that equitable interests may exist and the district court therefore lacks jurisdiction. HUD has no power to interpret state law, and the cited regulations do not interpret any provisions of federal law purporting to override the state law at issue here.