*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JAMES CASWELL and ALASKA LIME COMPANY, INC., | ) ) ) | Supreme Court No. S-17866 |
| Appellants, | ) ) | Superior Court No. 3AN-18-06594 CI |
| v. | ) ) | O P I N I O N |
| AHTNA, INC., | ) ) | No. 7595 – May 20, 2022 |
| Appellee. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Thomas A. Matthews, Judge.

Appearances: James Caswell, pro se, Anchorage, Appellant. Darryl L. Thompson, Darryl L. Thompson, P.C., Anchorage, for Appellant Alaska Lime Company, Inc. Matthew Singer, Robert J. Misulich, and Lee C. Baxter, Schwabe, Williamson & Wyatt, P.C., Anchorage, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

MAASSEN, Justice.

## I.  INTRODUCTION

A miner signed a 20-year lease with a corporate landowner for an easement allowing him access to his limestone-mining operation.  The lease included an option to

extend it for up to three additional 10-year terms as long as the miner was not in default and gave prior written notice of his intent to extend.

At the close of year 19, the miner sent a check prepaying the final calendar year as well as the six weeks following the lease's expiration date. And after the expiration date the miner sent another check prepaying the next year — year 21 — though without ever providing the express notice of intent to extend required by the lease. The corporation accepted both of the rent checks.

Five months later the corporation sued the miner and his company, contending that he was in breach and the lease had expired. The corporation later amended its complaint to add a claim for forcible entry and detainer (FED) — seeking to recover possession of the premises by court order — and shortly afterward served the miner with a notice to quit. The court held a hearing nearly 11 months later and granted the FED.

The miner appeals. He contends that the parties' dispute was too complex to be resolved through FED proceedings with limited opportunities for discovery; that the FED proceeding was unlawful because at the time the claim was asserted the corporation had not yet served the notice to quit; and that the miner's company was improperly named as a defendant and included in the FED judgment. We conclude that the superior court did not err and therefore affirm its judgment.

## II.    FACTS AND PROCEEDINGS

### A.    Background

In November 1997 James Caswell entered into a 20-year lease with Ahtna, Inc. for "a right-of-way easement with the right of ingress and egress" allowing him access to his limestone-mining operation on state land. The lease contained an option to extend it "for three (3) additional periods of ten (10) years," though Caswell could exercise the option only if he was not in default and if he provided Ahtna "written notice

of [his] intention to extend at least ninety (90) days prior to the expiration of the initial term." The lease also contained a "Hold Over" provision, which stated: "In the event the Lessee continues to occupy the Property after the last day of the term . . . and [Ahtna] elects to accept rent thereafter[,] a tenancy from month to month only shall be created." The lease's stated expiration date was November 19, 2017.

While the original lease identified the lessees as Caswell and "Alaska Limestone Company, a Corporation to be formed," Caswell never formed a corporation by that name. Instead, at some point in the early 2000s, Caswell formed Alaska Lime Company, Inc. (Alaska Lime). Alaska Lime owned equipment that was situated on Ahtna's land and that Caswell used in his limestone operation, including storage silos ranging from 30 to 250 tons in capacity.

In December 2016 Alaska Lime sent Ahtna a check that read "2017 annual lease on 25 [acres]" in the memo line, and Ahtna appears to have cashed it. In December 2017, a month after the lease's stated expiration date, Alaska Lime sent Ahtna another check with "2018 annual lease" in the memo line; Ahtna cashed this check as well. Neither Caswell nor Alaska Lime sent Ahtna any other form of notice of an intent to extend the lease.

## B. FED Proceedings

In May 2018 Ahtna filed a complaint against Caswell and Alaska Limestone Company claiming that Caswell had breached the lease "by his construction and use of a residential structure on property leased for commercial purposes" and that he was unlawfully possessing the land. The complaint noted that while the lease provided for an option to extend, Caswell's breach of the lease meant that he was prohibited from exercising the option. Ahtna argued that even if Caswell had not breached the lease, he had failed to give written notice of an intent to extend it at least 90 days before termination of the lease term, as required. In response, Caswell admitted

that he remained in possession of the property but disputed that he had breached the lease. He also argued that his continued possession of the property was lawful because Ahtna had received the check he had expressly denominated as payment for the "2018 annual lease."

On September 26 Ahtna moved for leave to file an amended complaint that would replace the defendant Alaska Limestone Company with the company Caswell had actually created, "Alaska Lime Company, Inc.," and which would assert a cause of action against Caswell and Alaska Lime for "Forcible Entry and Detainer and Trespass." The next day, September 27, Caswell and Alaska Lime received Ahtna's notice to quit, demanding that they "immediately quit the premises." The court granted Ahtna's motion to amend its complaint in October.

In February 2019 Ahtna moved to schedule an FED hearing. Caswell and Alaska Lime responded that FED proceedings — which are expedited and intended to decide only possession[1] — were inappropriate given the need for discovery and the defendants' intent to move for summary judgment on the interpretation of the lease, "which is generally a question of law for the Court." The superior court disagreed and granted Ahtna's motion for an FED hearing, finding that Ahtna had served Caswell and Alaska Lime with proper notice and that Caswell was not entitled to discovery.[2]

A two-day FED hearing was held in August 2019. Ahtna argued not only that the lease had expired but also that Caswell had breached it in various ways:

---

[1] *See Vinson v. Hamilton*, 854 P.2d 733, 735 (Alaska 1993) ("[The FED action] is summary in nature, and traditionally the court will recognize almost no affirmative defense or counterclaim. . . . The sole issue to address is that of possession.").

[2] Caswell nevertheless propounded some requests for document production, which Ahtna answered at least partially, and deposed Ahtna's former lawyer prior to the FED hearing.

allowing others to use the easement, committing waste by "treat[ing] [the property] like a junk yard," storing dangerous and toxic materials, and using the land as his year-round residence. Caswell and Alaska Lime argued that the lease had not expired because Ahtna had waived the written-notice requirement by cashing the rent checks Alaska Lime sent for periods following the lease's stated expiration date. Caswell and Alaska Lime also argued that Ahtna never informed Caswell how he was in breach or gave him any opportunity to cure, and that Alaska Lime was not a proper defendant in the FED action because it was not a party to the lease. Finally, Caswell and Alaska Lime argued that Ahtna's notice to quit was ineffective because it was received after Ahtna had already asserted the FED claim in its complaint, and by statute an FED action may be filed only if the tenant continues to hold possession *after* receiving notice to quit.[3]

The superior court granted a judgment for FED, finding that the original term of the lease had expired, that Caswell had not provided the required notice of an intent to renew, and that Ahtna had not waived the notice requirement. The court also found that Ahtna had given proper notice and that it was effective as to Alaska Lime even though the company was not a party to the lease. Because Caswell had not

---

[3] *See* AS 09.45.100(a) (providing that "a person entitled to the premises who seeks to recover possession of the premises may not commence and maintain an action to recover possession of premises under AS 09.45.060 – 09.45.160 unless the person first gives a notice to quit to the person in possession"); AS 09.45.110 ("An action for the recovery of the possession of the premises may be commenced on or after the date the tenant or person in possession unlawfully holds possession of the dwelling unit or rental premises by force, as determined under AS 09.45.090."); AS 09.45.090(b)(2)(F) (defining "unlawful holding by force" to include "when, *following service of a notice to quit*, . . . a person in possession continues in possession of the premises . . . at the expiration of the time limited in the lease or agreement under which that person holds" (emphasis added)).

effectively exercised his option to extend the lease, the court found it unnecessary to address Ahtna's argument that he was in breach.

Caswell and Alaska Lime appeal the FED judgment, arguing that the superior court should not have held an FED hearing, that Ahtna's notice to quit was ineffective, and that Alaska Lime was not a proper party to the FED proceedings.

## III.    STANDARD OF REVIEW

Whether the superior court correctly interpreted the FED statutes' scope, the discovery rules, and the lease's notice requirements are all questions of law to which we apply our independent judgment.[4]  "We review the trial court's factual determinations . . . for clear error."[5]  "A finding is not clearly erroneous unless [we are] left with 'the definite and firm conviction on the entire record that a mistake has been committed.' "[6] "The abuse of discretion standard . . . applies to review of the superior court's rulings on discovery issues."[7]

---

[4]     *Alaska Pub. Offs. Comm'n v. Not Tammie*, 482 P.3d 386, 388 (Alaska 2021) ("Statutory interpretation is . . . a question of law, which we review de novo." (quoting *Madonna v. Tamarack Air, Ltd.*, 298 P.3d 875, 878 (Alaska 2013))); *Dunn v. Jones*, 451 P.3d 375, 378 (Alaska 2019) ("Interpretation of the civil rules is a question of law that we review de novo." (quoting *Horne v. Touhakis*, 356 P.3d 280, 282 (Alaska 2015))); *AAA Valley Gravel, Inc. v. Totaro*, 219 P.3d 153, 160 (Alaska 2009) ("Contract interpretation generally is a question of law.").

[5]     *Romero v. Cox*, 166 P.3d 4, 7 (Alaska 2007).

[6]     *Fun Prods. Distribs., Inc. v. Martens*, 559 P.2d 1054, 1058 (Alaska 1977) (quoting *Alaska Foods, Inc. v. Am. Mfr.'s Mut. Ins. Co.*, 482 P.2d 842, 848 (Alaska 1971)).

[7]     *Wooten v. Hinton*, 202 P.3d 1148, 1151 (Alaska 2009).

## IV. DISCUSSION

### A. It Was Not Error To Grant An FED Hearing.

Caswell[8] argues that the superior court should not have granted an FED hearing because his dispute with Ahtna — involving a complicated commercial arrangement — was outside the scope of FED proceedings and because he was "entitled to discovery and a trial on the merits." We conclude that the superior court did not err.

#### 1. Caswell's dispute with Ahtna falls within the scope of FED proceedings.

"When a tenant occupies a property after the termination of his lease, in defiance of a notice to quit, the landlord may institute an FED action to regain possession."[9] "The essence of the action is a dispute over possession."[10] Although FED proceedings are intended to be expeditious, we have indicated that parties are not precluded from litigating substantial rights and significant issues.[11]

Caswell argues that the superior court should not have granted an FED hearing because he had a "viable, legal claim to possession of the property" and "the interpretation of the lease was at issue." He cites two cases applying U.S. Virgin Islands law for the propositions that "[a]n FED action is not available where the defending party

---

[8] Caswell and Alaska Lime joined in the appellants' brief and make the same arguments on appeal. We refer to them collectively as "Caswell" unless the context requires otherwise.

[9] *Vinson v. Hamilton*, 854 P.2d 733, 735 (Alaska 1993).

[10] *McDowell v. Lenarduzzi*, 546 P.2d 1315, 1318 (Alaska 1976).

[11] *See Shaible v. Fairbanks Med. & Surgical Clinic, Inc.*, 531 P.2d 1252, 1260 (Alaska 1975) (stating that superior court's conclusion that "[FED] actions [can]not be used as a vehicle to litigate substantial rights or issues" was erroneous).

is occupying the property under a claim of right" or if interpretation of the lease itself is in dispute.[12]

But Caswell's argument has no basis in Alaska law.[13] Alaska's FED statute prohibits "inquiry into the merits of the title," not issues of lease interpretation necessary to determining the right of possession.[14] In fact we addressed a lease interpretation issue much like Caswell's in the context of an FED proceeding in *Fun Products Distributors, Inc. v. Martens*.[15] The lease at issue in *Fun Products*, as here, required 90 days' notice of an intent to renew.[16] The lessees did not give notice but continued making monthly

---

[12] *C.M.L., Inc. v. Dunagan*, 904 F.2d 189, 191 (3rd Cir. 1990) (recognizing that under U.S. Virgin Islands law "a FED cause of action will not lie where [t]itle to the premises is in question; or [w]here there is proved to the Court to exist a bona fide question of the existence of a lease at law or in equity, which has not yet expired" (alterations in original) (quoting *Inter Car Corp. v. Disc. Car Rental*, 21 V.I. 157, 159 (Terr. Ct. 1984))); *Barnes v. Weber*, 50 V.I. 167, 172-73 (V.I. Super. 2008) (explaining limited scope of FED actions under Virgin Islands law).

[13] Caswell and Alaska Lime do cite an Alaska case — *Kopanuk v. AVCP Reg. Hous. Auth.* — for the proposition that FED proceedings are "unsuited to more complex issues." 902 P.2d 813, 816 n.1 (Alaska 1995). In *Kopanuk* we clarified that while FED proceedings result in equitable relief, not all equitable actions can be litigated in FED proceedings. *Id.* We were concerned in *Kopanuk* with district courts litigating equitable or title issues outside their jurisdiction, a concern not present here. *Id.* at 817.

[14] AS 09.45.150. *See also Modrok v. Marshall*, 523 P.2d 172, 174 (Alaska 1974) ("It is well-settled that where title to the property is in dispute, dispossession by [an FED action] may not be ordered. Instead the plaintiff must establish his paramount title in an action for ejectment.").

[15] 559 P.2d 1054 (Alaska 1977).

[16] *Id.* at 1055.

rent payments for three years, and the lessor accepted them.[17] The trial court concluded that the lease converted to month-to-month upon the lessees' failure to properly extend it, but we held that this was error and that the lease had been extended:

> We hold that as a matter of law where a lessor accepts lease payments for a substantial period of time (approximately three years) after receipt of a tardy notice of renewal, without advising the lessees that the late tender of notice was considered ineffective . . . , the lessor has waived the lease requirement for notice by the lessees of renewal of or within a certain time.[18]

Other FED cases have similarly involved a necessary inquiry into substantive issues of lease interpretation en route to deciding the right to possession.[19]

---

[17]     *Id.* at 1057.

[18]     *Id.* at 1058.  Here, the superior court refused to apply the *Fun Products* waiver rule, distinguishing the situation where "the landlord . . . accepted 36 monthly rent checks without objection" from this case, where Ahtna accepted and cashed two checks for annual rent, one of which was largely for the last 11 months of the undisputed lease term.  The superior court concluded that "[c]ashing a single check for a lease payment (over an annual one) is not the kind of unequivocal conduct necessary to demonstrate a purposeful waiver."  We agree with the superior court's conclusion.

[19]     *See Rockstad v. Glob. Fin. & Inv. Co., Inc.*, 41 P.3d 583, 584-85 (Alaska 2002) (interpreting disputed lease provision as determinative in FED proceeding); *Vinson v. Hamilton*, 854 P.2d 733, 736 (Alaska 1993) (explaining that issue of whether oral one-year lease existed "goes to the heart of the question of possession"); *Thrift Shop, Inc. v. Alaska Mut. Sav. Bank*, 398 P.2d 657, 660-61 (Alaska 1965) (affirming FED judgment when superior court inquired into existence of lease agreement during FED proceeding, rejecting argument that court in FED proceeding is "limited to determining whether appellants' entry of appellee's premises was forcible or whether they unlawfully held possession by force").

This is a case about possession, the "essence" of FED proceedings.[20] The issues at the FED hearing — whether the lease had expired or been validly extended and whether Caswell was in breach — are sub-issues relevant to whether Caswell was in valid possession of the property. The issues litigated therefore went "to the heart of the question of possession" and were well within the ambit of FED proceedings.[21]

### 2. It was not an abuse of discretion to rule that Caswell was not entitled to discovery.

FED actions are designed to "preserve the peace by providing a speedy method for the resolution of disputes over possession of real property."[22] FED actions are "summary in nature, and traditionally the court will recognize almost no affirmative defense or counterclaim."[23] Accordingly, FED actions are exempted from certain pretrial steps such as the entry of scheduling orders and the initial disclosures, expert witness disclosures, and pre-trial disclosures required in other civil actions.[24]

Caswell argues that whether Ahtna waived the lease's notice requirement for renewal is an issue requiring discovery and that it was therefore improper to dispose of it in an FED proceeding based on testimony alone. He claims that, had he had the opportunity, he would have "request[ed] . . . all documents from Ahtna's file on this

---

[20]     *McDowell v. Lenarduzzi*, 546 P.2d 1315, 1318 (Alaska 1976).

[21]     *Vinson*, 854 P.2d at 736 (explaining that issue of whether oral one-year lease existed "goes to the heart of the question of possession").

[22]     *McDowell*, 546 P.2d at 1318.

[23]     *Vinson*, 854 P.2d at 735.

[24]     *See* Alaska R. Civ. P. 26(a) (stating that mandatory disclosure rules apply to all civil actions except those listed in Alaska R. Civ. P. 16(g)); Alaska R. Civ. P. 16(g)(1) (stating that forcible entry and detainer claims "are exempted from the requirement of scheduling conferences and scheduling orders").

lease, all documents regarding the checks, the flagging, the emails in relation thereto and the deposit slips and bank accounts." He argues that additional discovery would have "likely included [Ahtna's] assertion that the check was deposited by mistake" and allowed the record to include both parties' communications about extending the lease.

We note first that Caswell was not denied discovery notwithstanding the court's order disallowing it. Caswell had submitted document requests to Ahtna before the court granted Ahtna's request for an FED hearing, and Ahtna responded to those requests; Caswell also deposed Ahtna's former lawyer. His prehearing brief sought to exclude certain evidence but made no mention of evidence he needed but had been denied. On appeal he does not identify any evidence he actually asked for and did not receive.

More importantly, at the time the court denied Caswell's request for discovery it presumably did so under the assumption that an FED hearing would be held in the near future; normal discovery is not practicable under FED proceedings' expedited time line.[25] Once the hearing was scheduled months in the future, Caswell did not ask the court to reconsider this aspect of its ruling. We hold that it was not an abuse of discretion to rule that Caswell was not entitled to discovery before the FED hearing.[26]

---

[25] Alaska R. Civ. P. 85(a)(2) (providing that FED actions shall occur "not more than 15 days from the date of filing of the complaint unless otherwise ordered").

[26] We do not hold that permitting discovery in an FED proceeding would violate the Civil Rules, as the superior court concluded; the Civil Rules exempt FED proceedings from some pretrial requirements but not others. We acknowledge that in many circumstances, allowing parties time for discovery would be antithetical to the purposes of FED proceedings — that they be "speedy" and "summary in nature." *See supra* notes 22 and 23. Whether to allow discovery in an FED proceeding when time permits and these concerns are not present is committed to the trial court's discretion. *See Wooten v. Hinton*, 202 P.3d 1148, 1151 (Alaska 2009).

**B.** **Ahtna Did Not Fail To Provide Effective Notice**.

Alaska Statute 09.45.110 allows a lessor to file an FED action "on or after the date the tenant or person in possession unlawfully holds possession of the dwelling unit or rental premises by force." The statutory definition of "unlawful holding by force" includes when "following service of a written notice to quit . . . a person in possession continues in possession of the premises . . . at the expiration of the time limited in the lease or agreement under which that person holds."[27] "The service of a notice to quit upon a tenant or person in possession does not authorize an action to be maintained against the tenant or person for the possession of the premises . . . until the expiration of the period for which that tenant or person may have paid rent for the premises in advance."[28] In the case of a month-to-month tenancy where the tenant has paid rent in advance, the notice must be given at least 10 days before rent is again due.[29]

Caswell argues that Ahtna's notice to quit was ineffective because it was not received until after Ahtna filed the motion to amend its complaint to include an FED action. He argues that under the statutory definition he could not have been holding the property "by force" until after he received notice and remained on the property unlawfully, and thus there were no grounds for an FED action at the time it was filed. He argues that if he was lawfully in possession of the property as a month-to-month tenant, the notice was still untimely because he should have been granted another 30 days' notice before an FED action could be filed.

---

[27] AS 09.45.090(b)(2)(F)(i).

[28] AS 09.45.130.

[29] *Id*.

Caswell received the notice to quit on September 27, 2018.[30] Any proceedings after that date were premised on adequate notice, as Caswell's continuation in possession after expiration of the lease term met the statutory definition of holding by force.[31] Although Ahtna did include its FED claim in its motion to amend on September 26 — the day before Caswell received notice — the amendment was not approved by the court until October 31. The hearing itself was held 11 months after the amendment was filed, giving Caswell plenty of notice as well as time to cure any problems that could be cured. And even if Caswell had a right to possess the property as a month-to-month tenant at the time notice was given, Ahtna had the right to notify him of its intent to file an FED claim if he did not vacate the property after the tenancy expired.[32]

Caswell's payment of rent through the end of 2018 potentially made him a month-to-month tenant for that period.[33] Because FED actions may not be brought until after the period for which the tenant has paid has ended, and the FED proceedings were initiated in October 2018, Caswell could have objected to the timing of the

---

[30] The court stated that Ahtna provided the notice to quit on September 25, 2018, but the evidence seems to show that Caswell did not receive it until September 27. This timing issue was not important to the superior court's decision and is not important to ours.

[31] AS 09.45.110; AS 09.45.090(b)(2)(F)(i).

[32] As noted above, in the context of a month-to-month tenancy a notice to quit must be sent at least 10 days before the next rent payment would be due. AS 09.45.130. If Caswell did establish a month-to-month tenancy based on the prepayment of the 2018 rent, the next rental payment would not have been due until January 2019. Under this theory the notice to quit was sent much earlier than required by AS 09.45.130.

[33] The lease's holdover provision states that the lessor's acceptance of rent after the lease has expired results in a "tenancy from month to month."

proceedings.[34]  But he did not make this argument at or before the FED hearing, instead arguing that the notice itself was premature.[35]  Because the notice to quit was offered months before the potentially prepaid period ended and served the purposes of timely notice, we conclude that it was effective.[36]

## C.    It Was Not Error To Grant An FED Judgment Against Alaska Lime.

FED proceedings are permitted against the "tenant or person in possession" who "unlawfully holds possession" by force.[37]  Alaska Statute 09.45.090(b)(2)(F)(ii) defines persons holding by force to include a "person in possession continu[ing] in possession of the premises . . . without a written lease or agreement and without the consent of the landlord."  The superior court found that although Alaska Lime was not named in the lease, it was properly named as a defendant in the FED action and as subject to the judgment because it was physically occupying the property and could "have no greater rights than Caswell."

---

[34]    *See* AS 09.45.130 ("The service of a notice to quit upon a tenant or person in possession does not authorize an action to be maintained against the tenant or person for the possession of the premises until the expiration of the period for which that tenant or person with possession may have paid rent for the premises in advance.")

[35]    Caswell apparently reads AS 09.45.130 to mean that notice to quit cannot be given until after the prepaid period has ended.  But AS 09.45.130 only states that actions cannot be maintained before the prepaid period has ended — not that a notice to quit cannot be given before the prepaid period has ended.  The statute affirmatively requires that notice be given before rent is due again.  AS 09.45.130.

[36]    AS 09.45.130.  At oral argument Caswell contended that the content of the notice to quit — as opposed to its timing — was also improper.  But any issues about the content of the notice were not addressed in the parties' briefs on appeal and are therefore waived. *Bunton v. Alaska Airlines, Inc.*, 482 P.3d 367, 375 (Alaska 2021) ("We consider arguments not raised in an appellant's opening brief to be waived.").

[37]    AS 09.45.110.

Alaska Lime argues that it should not have been a party to the FED action because it was not a lessee and was not in possession of the property. We agree that Alaska Lime was not a lessee — the lease listed as lessees only Caswell and "Alaska Limestone Company, a Corporation to be formed" (but which was never formed). But there was evidence that Caswell and Alaska Lime possessed the property jointly. Caswell identified a variety of "equipment or assets of the corp[oration]" that were located on Ahtna's property, including machinery, a boat, trucks and truck parts, and silos of various sizes. When Caswell gave notice in 2008 of his intent to exercise an option to lease an additional five acres, he sent the letter on Alaska Lime's letterhead. Rent payments, including the ones central to this appeal denominated as payment for the 2017 and 2018 annual rent, were made by Alaska Lime's checks.

This evidence supported a conclusion that Alaska Lime was a "person in possession" as contemplated by the FED statute,[38] that it was not on the property under a valid lease, and that it lacked Ahtna's consent to remain there. Therefore, the superior court did not err by including Alaska Lime as a defendant in the FED proceedings and entering judgment against it.

## V.    CONCLUSION

We AFFIRM the judgment of the superior court.

---

[38]    AS 09.45.110.